SOCONY MOBIL OIL COMPANY, INC.[1] *vs.* ELEANOR CRAY
COTTLE, trustee.[2]

Suffolk.    April 2, 1957. — June 5, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & CUTTER, JJ.

*Easement.   Way,* Private: termination.   *Deed,* Construction.   *Adverse
Possession and Prescription.   Waiver.   Equity Pleading and Practice,*
Waiver.

Upon appeal by the plaintiff from a final decree in a suit in equity for a
declaratory decree with respect to the existence of an easement over
land alleged to be owned by him, the defendant was not entitled to
raise in this court the point that the plaintiff had not shown himself to
be the owner of that land where, assuming that the defendant's answer
denied the plaintiff's ownership, it did not appear from the record that
the question of ownership was raised at the trial and apparently the
suit was tried on the theory that the plaintiff was the owner.   [196]

An easement conveyed by a grantee of land to his grantor, as appurte-
nant to the grantor's remaining land, to pass and repass on foot and
with motor vehicles over a strip of the granted land terminated five
years after the conveyance when the grantor, a lumber company,
moved its office and business away from premises near its remaining
land and ceased to use a two car garage building on its remaining land
for the parking of its executives' automobiles, as it had done at the
time of the creation of the easement and during the five years, and all
use of that building as a garage in connection with a business conducted
on the remaining land ceased, although thereafter certain businesses
themselves were carried on in that building, where the easement was
created "for such purposes as are or may be connected with the use
of . . . [the] remaining land . . . so long as . . . [the company] or
its successors or assigns shall maintain a garage on the site of . . .
[the] existing garage and use the same as such solely for motor
vehicles used for the purposes of the business carried on by it or them
on such remaining land."   [197]

An easement by prescription to pass and repass over a strip of land in
connection with use of a building on adjoining land was not acquired
by the owner of the adjoining land where there was no use of the
building during three of the twenty years relied on to establish the
prescriptive right.   [197–198]

----

[1] The plaintiff commenced this suit under its former name of Socony-
Vacuum Oil Company Incorporated, and was allowed by amendment to sub-
stitute its correct name.

[2] Herbert Gross was also named as a defendant but by agreement the suit
was dismissed as to him.

BILL IN EQUITY, filed in the Land Court on December 28, 1954.

The plaintiff alleged in the first paragraph of its bill that it was "successor in title to Standard Oil Company of New York" of premises conveyed to the latter by Curtis & Pope Lumber Co., on July 27, 1926.

The suit was heard by *Cotton, J.*

*Richard C. Evarts*, for the plaintiff.

*James B. Muldoon*, for the defendant.

COUNIHAN, J.  This is a bill in equity in the Land Court for a declaratory decree under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1.  Primarily the plaintiff seeks a determination of the existence of easements in a right of way and in a so called "reserved area" on its land for the benefit of the defendant.  The plaintiff also seeks an injunction and damages.

A final decree was entered declaring that the easements in the passageway and the "reserved area" were "in full force and effect" and that the *"land of plaintiff, Socony Mobil Oil Company, Inc.* is still subject to said easements" (emphasis supplied).  The plaintiff appealed from this decree.  We are of opinion that there was error.

The judge made "Findings, Rulings and Order for Decree."  The evidence is not reported in its entirety but the judge designated portions of the testimony to be printed as part of the record.  Rule 2 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 693.  In these circumstances it is our duty to examine such testimony and decide the issues according to our judgment as to the facts and the law, giving due weight to the findings of the judge which will not be reversed unless plainly wrong.  *LeBlanc* v. *Molloy*, 335 Mass. 636.

The facts found by the judge and by us may be summarized as follows: In 1926 the Curtis & Pope Lumber Co., hereinafter called Curtis & Pope, owned a parcel of land at the corner of Massachusetts Avenue and Albany Street in Boston.  On July 27, 1926, it conveyed part of this land

containing 5,945 square feet and bounded on Massachusetts Avenue and Albany Street to the Standard Oil Company of New York, hereinafter called Standard. The parcel sold and part of its remaining land are shown on a plan recorded with Suffolk registry of deeds, book 4821, page 203. On the same day the parties to the conveyance entered into an indenture the material parts of which read: ". . . the party of the first part does hereby covenant with the party of the second part that so long as the party of the second part or its successors or assigns shall maintain a garage on the site of said existing garage and use the same as such solely for motor vehicles used for the purposes of the business carried on by it or them on said remaining land of the party of the second part . . . the party of the first part will not build upon or in any manner obstruct that portion of the granted premises indicated and marked 'Reserved Area' on said plan. And for the consideration aforesaid [it] does hereby grant and convey unto the party of the second part and its successors and assigns full and free right and liberty for it and their officers, agents and servants at all times to pass and repass over, on foot and with motor vehicles, but not with horses or horse-drawn vehicles, for such purposes as are or may be connected with the use of its remaining land, and as appurtenant thereto, that portion of the granted premises thirteen (13) feet in width, adjoining the remaining land of the party of the second part, indicated and marked 'Right of Way' and that portion of said granted premises indicated and marked 'Reserved Area' on said plan, so long as the party of the second part or its successors or assigns shall maintain a garage on the site of said existing garage and use the same as such solely for motor vehicles used for the purposes of the business carried on by it or them on such remaining land of the party of the second part."

This indenture with a plan attached was subsequently recorded by Curtis & Pope in the Suffolk registry of deeds in book 4842, page 269. On April 7, 1943, Curtis & Pope conveyed its remaining land with a frontage of 42.67 feet on Albany Street to the defendant and another as trustees.

How the defendant acquired sole title does not appear, but in our view of the case it is immaterial because not argued by either party. This conveyance was "Subject to and with the benefit of the terms and conditions" of said indenture.

Prior to the sale of the land to Standard, Curtis & Pope had occupied a brick building on this land at the corner of Massachusetts Avenue and Albany Street as its main office. There was also a stucco building on Albany Street and a two car brick garage in the rear of it. Before the sale two executives of Curtis & Pope used this garage in which to park their automobiles when they came to the office. They continued this practice until 1931.

After the sale Curtis & Pope moved its office to the other side of Massachusetts Avenue in a building it owned there. When this building was taken by the city of Boston for hospital purposes in 1931 Curtis & Pope moved its office to "South Bay . . . off Southampton Street." The executives then ceased to park their automobiles in the garage. For a year or so Curtis & Pope stored lumber, which it sold at retail, in the stucco building and in the garage. There was no evidence of any use of the garage from 1932 to 1935.

In 1936 a man ran a machine shop and welding business in the stucco building which was torn down in 1937. He used the garage for minor welding jobs. From 1938 to 1945 one Salmonson used the garage for supplying automobiles with slip covers and upholstery. In 1946 one Gross bought out Salmonson and carried on the business of repairing the tops and upholstery of automobiles. He used the garage for his repair work and the front of the lot for advertising and parking his own and customers' automobiles.

On October 15, 1954, the plaintiff notified Gross that he was wrongfully using the passageway and the "reserved area" and requested him to discontinue such use. This suit was instituted on December 23, 1954.

The judge found that the defendant contended that the easements in the passageway and the "reserved area" still existed in her favor and that the plaintiff contended that

the easements were terminated. He also found and we agree that an actual controversy had arisen between the plaintiff and the defendant.

The judge further stated that "In the light of all the circumstances, taking the instrument as a whole, I find the business carried on by [the] defendant, its predecessors, lessees or agents, and use made of the 'garage' in carrying on such business was within the intended activity provided for by said indenture; that there have not been sufficient acts shown to warrant finding a breach of the terms and conditions set forth therein." We are of opinion that this finding was erroneous.

Before discussing the merits, we think we first ought to discuss the contention of the defendant that the plaintiff has no standing to prosecute this bill because it has not shown that it is a successor in title to Standard which was a party to the original purchase and the indenture. We assume without deciding that the first and seventh paragraphs of the defendant's answer [1] put in issue the plaintiff's ownership of the servient tenement and that there was no evidence to support the judge's findings that the land in question was "now owned by [the] plaintiff and [the] defendant" and that the successors and assigns of the parties to the 1926 indenture are "now the plaintiff and [the] defendant." The final decree concluded that the "land of plaintiff, Socony Mobil Oil Company, Inc., is still subject to said easements." Nothing appears in the record, other than in the answer of the defendant, to show that this point was raised in the trial in the Land Court. Apparently the suit was tried on the theory that the plaintiff was the owner of the servient tenement as is indicated in the findings of the judge and in the final decree. It is too late to raise this question for the first time in this court. *Pitman v. J. C. Pitman & Sons, Inc.* 324 Mass. 371, 373–374.

---

[1] "1. The defendants neither admit nor deny the allegations contained in paragraph No. 1 of the plaintiff's bill, and call upon the plaintiff to prove the same so far as material." Part of the seventh paragraph reads, "they [the defendants] contend that the plaintiff has no interest in either the right of way or the reserved area."

We now proceed to a discussion of the merits. Although the judge found that "a certain building, referred to in said agreement as a garage for motor vehicles used for the purposes of any business carried on by anyone on said Lumber Co. land, is not now nor has been for a number of years maintained as a garage," he based the decree upon his ultimate finding and conclusion that "the business carried on by defendant, . . . [her] predecessors, lessees or agents, and use made of the 'garage' in carrying on such business was within the intended activity provided for by said indenture." These findings appear to us to be inconsistent and insufficient to support the decree.

Furthermore we are of opinion that the use of the garage was to be limited solely for the convenience of those carrying on a business on the defendant's land and not to permit a business itself to be carried on in the garage. It is plain that all use of the garage building as a garage in connection with a business conducted on the defendant's premises ceased when Curtis & Pope moved to "South Bay" and that the rights in the passageway and the "reserved area" thereupon terminated by their own limitations. This limited right of way and the use of the "reserved area" could not be extended into a general easement greater than that contemplated or intended by the parties to the indenture. *Atwater* v. *Bodfish*, 11 Gray, 150. *Bangs* v. *Potter*, 135 Mass. 245, 247. *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad*, 215 Mass. 381, 388. *Makepeace Bros. Inc.* v. *Barnstable*, 292 Mass. 518, 525.

The changed use of the easements was not within the contemplated "normal development of the use of the dominant tenement." Restatement: Property, § 484. See also § 483. The easements, being created for "so long as" certain uses were made of them, terminated without any entry or other act of the owner of the servient tenement. *Markey* v. *Smith*, 301 Mass. 64, 69. *Akasu* v. *Power*, 325 Mass. 497, 501. *Batchelder* v. *State Capital Bank*, 66 N. H. 386, 388.

The defendant, however, contends that if the easements terminated in 1931 when Curtis & Pope ceased to use the

garage for the storage of automobiles, as we hold, she had acquired easements by prescription when this suit was brought in 1954. Without discussing the various uses to which the garage was put during the intervening years it is enough to say that the judge expressly found that there was no evidence of any use (adverse or otherwise) from 1932 to 1935. This effectively disposes of an adverse and continuous use for twenty years so that no prescriptive rights could have been acquired by the defendant.

The record does not disclose the amount of damage if any sustained by the plaintiff and it does not argue the question of damages in its brief so we do not pass upon such question. Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698.

It follows that the final decree must be reversed and a new final decree entered declaring that the land owned by the plaintiff is not now subject to any easements in favor of the defendant and providing that the defendant and her tenants be permanently restrained and enjoined from passing and repassing over said right of way and from using in any way the "reserved area" both of which are described in the indenture dated July 27, 1926.

The plaintiff is to have costs of this appeal.

*So ordered.*