UNITED STATES of America,
Appellant,

v.

SIXTEEN PARCELS OF LAND LOCAT-
ED IN CITY BLOCK NO. 193, OF THE
CITY OF ST. LOUIS, STATE OF MIS-
SOURI, and Samuel J. Ridenour, et al.,
Appellees.

No. 16340.

United States Court of Appeals
Eighth Circuit.

July 18, 1960.

272

Roger P. Marquis, Atty., Lands Division, Dept. of Justice, Washington, D. C., made oral argument in behalf of appellant.

No argument was made in behalf of appellees.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and MATTHES, Circuit Judges.

JOHNSEN, Chief Judge.

The United States is the owner of Block No. 193, in the City of St. Louis, Missouri, which is the site of what is known as the Old Post Office Building. Title was acquired in 1872 through condemnation proceedings.

During 1957, there was talk about the Government disposing of the property. Descendants or their successors in interest of some of the original condemnees then began to assert that the Government's acquisition had been one solely for public use and that a cessation thereof would occasion a reversion to them and to the heirs of the other condemnees.

The United States then instituted this suit under 28 U.S.C.A. § 2201, for a declaratory judgment, to effect a quieting of its title in fee simple, against all the heirs, assignees, or other successors in interest of the original condemnees.

On a hearing, the court rendered a decree declaring and adjudging that the condemnation proceedings had vested full fee simple title in the United States, and that the defendants had no reversionary rights of any nature in the property.[1]

This determination has been accepted by the defendants, and they are not appealing from the decree. The United States, however, brings the case before us, because of a collateral statement added by the court in the decree, which the Government regards as leaving a cloud upon its title for disposal purposes, and which it accordingly seeks to have stricken from the decree by modification.

The decree, as has been noted, declared and adjudged that the condemnation proceedings had vested fee simple title in the United States, and that, on the basis of these proceedings and the statutes underlying them, no reversionary interest of any nature existed in favor of the condemnees or the defendants as their successors. Following these provisions, there was a statement that "The ruling here is restricted to a determination that fee simple title is in the United States, and that defendants have no reversionary interest". Then appeared the sentence, which the Government is seeking to have stricken: "The Court does not mean to indicate the plaintiff may or may not be restricted by the act passed by the Missouri legislature authorizing acquisition".

Explanation of the court's reason for engaging in this expression was made in its reported opinion, 171 F.Supp. 109, 111. The court there stated that it had simply added the same cautionary note as was done by the Missouri Supreme Court in relation to the situation involved in Daly v. Kansas City, Mo., 317 S.W.2d 360, 364.

In the Daly case, reversion had been attempted to be claimed of some property condemned by the City of Kansas City for park purposes, because of an alleged diversion thereof by the city subsequently to other uses. The condemnation had been made under the provisions of the Kansas City Charter of 1908, which authorized the city, through proceedings in the Circuit Court, to condemn prop-

---

1. The decree gave recognition to a perpetual easement for a railroad tunnel under the land, which had been granted by the Government to the Tunnel Railroad of St. Louis, and of which the Terminal Railroad Association of St. Louis is now lessee, but this aspect is not here involved.

erty for parks, parkways and boulevards, with "title in fee". The Missouri Supreme Court held that, on the basis of the charter authority and the condemnation proceedings had, the city had acquired fee simple title to the property involved; that the condemnees had been divested of "every right and interest they had in the instant land"; and that "they could not acquire any interest by reversion, in the event of a diversion in use by the city, and hence are not entitled to the relief they seek herein". 317 S.W.2d at page 364.

The court then added a collateral paragraph as follows: "We do not mean to indicate, however, that Kansas City may use the land in question for any purpose it may desire. Section 29 of the Charter of 1908 provides that 'The lands which may be selected and obtained under the provisions of this article *shall remain forever for parks, parkways and boulevards for the use of all the inhabitants of said city.*' We restrict our ruling upon that issue to the proposition that plaintiffs could not be vested with any title or right of possession by reason of the alleged diversion in the use of the land from park purposes." (Emphasis supplied.) Ibid.

It was the expression contained in this paragraph that prompted the trial court to insert in its decree the sentence which is here being challenged. The court, in its reported opinion, made quotation of the paragraph from the Missouri Supreme Court opinion and said that it constituted "a cautionary note * * * which must be added to a determination in the case at bar that the United States has fee simple title to the land in question". It explained its reason for regarding the expression as having application in the situation, as follows: "It should be noted that the Missouri Act giving consent to the acquisition of the land is perhaps analogous to the limitations found in the Kansas City Charter of 1908, and the court does not mean to indicate the plaintiff may or may not be restricted by the act passed by the Mis-

souri legislature authorizing acquisition". 171 F.Supp. at page 111.

It seems manifest that what the Missouri Supreme Court intended by its expression was to leave open the question whether the City of Kansas City, under its 1908 charter, might have made such a dedication of any lands condemned by it for park purposes as not to entitle it to use these lands "for any purpose it may desire", in view of the provision of the charter that "The lands which may be selected and obtained under the provisions of this article shall remain forever for parks, parkways and boulevards for the use of all the inhabitants of said city".

It might be observed that the expression in the Daly case was made in a situation where continued holding and not intended disposition of the city's fee title was involved. But even if it could be contended that, on the language of the charter, the caution might be as applicable to a disposition of park property as to the use made thereof during its holding, the expression cannot in our opinion possibly have any application or significance here. Neither as to use nor as to disposition are we able to see any basis to regard a question of possible dedication as being capable of existing in respect to the property in suit.

Neither in the statute authorizing the acquisition, 17 Stat. 43, nor in the legislative consent given by the State of Missouri thereto, Missouri Laws of 1872, p. 472, nor in the condemnation proceedings had, is there contained any language of pledge or commitment, such as in the Kansas City charter. Nowhere is there anything more than what amounts to an expression or recognition of the purpose of the taking, such as is conventionally engaged in merely to indicate the warrant for making a condemnation.

The enabling act of Congress, 17 Stat. 43 authorized the Secretary of the Treasury to purchase, or to acquire "by condemnation in pursuance of the statutes of the State of Missouri, a suitable lot

in the city of Saint Louis, for the purpose of erecting thereon a building, to be used for the purposes of a custom-house, post-office, United States court, and other federal offices". The act contained provisions for appropriations for the lot and building and then made the following prescriptions as its sole conditions or limitations: "(B)ut no expenditure shall be made or authorized for the construction of said building until a valid title to the land for the site of said building shall be vested in the United States, and until the State of Missouri shall cede its jurisdiction over said site and shall also duly release and relinquish to the United States the right to tax or in any way assess said site, or the property of the United States that may be thereon, during the time that the United States shall be or remain the owner thereof".

The General Assembly of the State of Missouri gave its consent, Missouri Laws of 1872, p. 470, to the United States acquiring such a site, "for the erection of a courthouse, custom-house, postoffice, or other buildings, for the accommodation of the business of the United States", with "the title in fee", and with the privilege, if condemnation was required, to "proceed, in the same manner that is provided by chapter sixty-six of the General Statutes of Missouri". And, subject only to a reservation of the right in the State to have service of process made on persons within the premises, the State of Missouri ceded to the United States all jurisdiction over the land and released and relinquished the right to tax, or in any way assess the same or any property of the United States thereon "during the time that the United States may be or remain the owner thereof".

The decree in the condemnation proceedings had in the state court of Missouri, pursuant to the foregoing statutes, provided, as has been previously indicated, that "it is * * * adjudged, found and decreed, that the title to the real estate described in the petition * * and all the rights and interests therein heretofore vested in said parties defendants in said cause be vested absolutely in the said United States".

Clearly, the public use involved under the authorizing act of Congress was simply general governmental purposes. Similarly, the recognition made by the consent statute of the State of Missouri was that the acquisition and the construction were "for the accommodation of the business of the United States". Congress did not make a commitment or grant of a right to any use of the land or building on the part of the public at large, which the individual members thereof might be entitled to continue to enjoy, such as the charter of Kansas City had purported to do in respect to property taken by it for park purposes. And the Missouri consent statute did not attempt to create any such right by way of condition or restriction. See 18 Am.Jur., Eminent Domain, § 49. Thus, we do not see how any question of possible dedication is capable of existing in the situation, or how there is any basis to regard the caution expressed by the Missouri Supreme Court in the Daly case as having any possible application.

As we have suggested, mere expression of the purpose for which property is being taken, in the provisions of a federal enabling act, or in the recitations of a state consent statute, or in the allegations of a condemnation complaint, ordinarily constitutes simply an indication of the warrant for the condemnation, and it does not, without more, effect a dedication of the property to the use or purpose for which it is immediately taken. Only Congress can make a dedication of federal property; and a State cannot impose conditions in a consent statute to federal condemnation which will operate to create a dedication without Congressional approval or acceptance thereof. As was said in Kohl v. United States, 91 U.S. 367, 374, 23 L.Ed. 449: "If the United States have the power [of condemnation], it must be complete in itself. It can neither be enlarged nor diminished by a State. Nor can any State prescribe the manner in

which it must be exercised. The consent of a State can never be a condition precedent to its enjoyment. Such consent is needed only, if at all, for the transfer of jurisdiction and of the right of exclusive legislation after the land shall have been acquired".

██ The State of Missouri could not in its consent statute have inserted any provisions that would have operated to create a dedication as to the property, as against the enabling act of Congress. Nor did it here attempt to do so. And from the nature of the purpose for which the property was being taken—general governmental operations, without any direct right of use in the members of the public at large—there was no basis for any possible dedication to be involved.

The Government is entitled to have the decree modified, in accordance with its request, by having stricken therefrom the sentence, "The Court does not mean to indicate the plaintiff may or may not be restricted by the act passed by the Missouri legislature authorizing acquisition".

Decree modified as prayed.