ANNTCO CORPORATION *vs.* SHREWSBURY BANK AND
TRUST COMPANY.

Worcester.   October 5, 1967. — November 7, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Easement.   Way,* Public: drainage.   *Trespass.   Equity Jurisdiction,*
Trespass.   *Water.*

A plaintiff in a suit in equity owning land on the south side of a State
highway subject to an easement giving the Commonwealth a right to
construct and maintain upon the plaintiff's land "a drain extending
from a drainage system . . . constructed within the limits of said
highway . . . , to discharge water from said drainage system into said
drain and through . . . [the plaintiff's] land, to carry water away
from said highway and over and through . . . [the plaintiff's] land
. . . for public convenience and for the proper construction and care
of said highway," was entitled to enjoin the defendant, the owner of
land on the south side of the highway abutting land of the plaintiff,
from "permitting water to be piped or conducted from its . . . prem-
ises so that it flows in or through" the drain on the plaintiff's land,
where it appeared that, in order to solve a "continuing and persistent"
problem of excessive ground water on its land, the defendant obtained
a permit from the Commonwealth "to enter the State highway drainage
system," that a pipe draining the defendant's land was connected to
the highway drain "in the gutter line" on the south side of the high-
way and percolating ground water from the defendant's land was
added to the water from the highway drainage system to flow through
the drain on the plaintiff's land, and that continuance of the de-
fendant's unauthorized drainage measurably decreased the rental and
market value of the plaintiff's land, even though there was no physical
damage thereto from the increased flow.

BILL IN EQUITY filed in the Superior Court on March 5,
1962.

The suit was heard by *Beaudreau,* J., on a master's report.

*John W. Spillane* for the defendant.
*Edward P. Healy* for the plaintiff.

SPIEGEL, J.   This is a bill in equity to enjoin a continuous
trespass by the defendant in draining water from its premises
into a conduit running through the plaintiff's land.   The
suit was referred to a master.

After the master filed his report the trial judge ordered the case recommitted to the master for findings of fact on certain aspects of damage. The defendant filed objections to the master's report on the order of recommittal. The judge entered an interlocutory decree confirming the master's report "so far as injunctive relief is concerned." No appeal was taken from the interlocutory decree. A final decree was entered enjoining the defendant from "suffering or permitting water to be piped or conducted from its . . . premises so that it flows in or through a pipe . . . in or under the . . . [plaintiff's] premises." From this decree the defendant appealed.

We summarize the material findings of the master. In 1931, the plaintiff's predecessors in title granted an easement to the Commonwealth, giving it the right to construct and maintain "upon our land, situated on the southerly side of the proposed State highway [Route 9] in the Town of Shrewsbury . . ., a drain extending from a drainage system to be constructed within the limits of said highway . . ., to discharge water from said drainage system into said drain and through our said land, to carry water away from said highway and over and through our land above described, for public convenience and for the proper construction and care of said highway." The deed referred to a plan which showed a proposed thirty-inch drain running under the highway and diagonally across the land in question. The Commonwealth did subsequently construct such a drain-pipe. In 1953, the plaintiff acquired the land, subject to the easement. At that time there was one store building on the property. The plaintiff then built a second, cellarless building "over the area containing the 30 inch pipe," which was about eight feet underground. The two buildings "have been and are occupied by commercial tenants." "[T]he said pipe at the time of construction of said building was mainly used for drainage of water from a wet swampy area located on the northerly side of . . . [Route 9] . . . and . . . the water ran through the pipe in the . . . [plaintiff's] property after reaching same through a 30 inch pipe which

crossed . . . [Route 9] from north to south." In 1961, the defendant, shortly after its formation, purchased land on the south side of Route 9 adjacent to that of the plaintiff. Construction of the bank building was begun in the same year. It was discovered that there was a "continuing and persistent" problem of excessive ground water at this site. The defendant negotiated with the plaintiff to drain this water across the rear of the plaintiff's land, but this idea was abandoned as impractical. The defendant then applied to the Department of Public Works for a permit "to enter the State highway drainage system." This permit was granted, over the objections of the plaintiff. On July 17, 1961, an eight-inch pipe, draining the defendant's land, was connected to the thirty-inch pipe "in the gutter line of the southerly side of . . . [Route 9] approximately opposite the halfway point of the frontage of . . . [plaintiff's] land on . . . [Route 9]." Since then, percolating ground water from the defendant's property on the south side of Route 9 has been added to the flow of water from the north side of Route 9 through the thirty-inch pipe on the plaintiff's property. The pipe is large enough to accommodate this increased flow.

The master concluded "that the connection made by the Shrewsbury Bank & Trust Co. under the permits of the Department of Public Works . . . was not within the meaning and intent of the language used in the easement granted in 1931 . . . . [T]he purpose of the granted easement was for the construction of a drain from the drainage system to be constructed within the highway . . . and it was also for the purpose of carrying water from the highway and for public convenience and for the proper construction and care of said highway. . . . [T]he connection made by the Shrewsbury Bank & Trust Co. serves a private purpose of said bank, i.e. to take care of the problem of percolating water on its property, and constitutes a burden on the Anntco Corporation property which was not authorized by Anntco or its predecessors in title." The master also found that while no physical damage to Anntco's property had occurred, "the connection of the pipe . . . does have some

adverse effect upon the value and salability of the . . . [plaintiff's] property" and "has reduced the fair market value of the . . . [plaintiff's] property by $1000.00," and that "the fair rental value . . . was lessened to the extent of $600.00 a year, . . . by reason of . . . [the] conduct of the defendant."

The defendant contends that the permit allowing it to connect its pipe to the drainage system running across the plaintiff's land was within the Commonwealth's powers under the original easement in that it serves the public convenience. The defendant argues that its land was within the proposed area to be served by the Route 9 drainage system, and that the purpose of draining its land is a public purpose. We do not agree. The ultimate findings of the master must stand unless an examination of the subsidiary findings shows such inconsistencies between them that both cannot stand. *Chopelas* v. *Chopelas*, 303 Mass. 33, 37. We are unable to discover any such inconsistencies. "[I]f an easement is stated to be for a particular purpose it is limited to the purpose stated." *Makepeace Bros. Inc.* v. *Barnstable*, 292 Mass. 518, 525. See *Delconte* v. *Salloum*, 336 Mass. 184, 190; *Socony Mobil Oil Co. Inc.* v. *Cottle*, 336 Mass. 192, 197; *Comeau* v. *Manzelli*, 344 Mass. 375, 381. Here, the master found that the original conveyance limited the easement to carrying water from the highway and serving the public convenience in its construction and maintenance. It was hardly inconsistent for him to find that draining land not within the highway to serve the needs of the defendant, and not those of the Commonwealth, was not a public purpose.

The defendant further argues that there was no "undue burden upon the easement" because there was no physical damage to the property from the increased flow and because in any event the Commonwealth could enter the premises to correct any "overuse of the easement." The Commonwealth's possible rights are not relevant here, since the master found that the use in question did not serve the Commonwealth's purposes or come within the language of the original conveyance. The master did find that the con-

tinuance of the defendant's unauthorized drainage measurably decreased the rental and market value of the property. An intentional and continuing trespass to real estate may be enjoined, *Ottavia* v. *Savarese,* 338 Mass. 330, 336, because to do otherwise enables the trespasser to deprive the owner of property rights at a valuation. *Chesarone* v. *Pinewood Builders, Inc.* 345 Mass. 236, 240–241. The defendant's actions were not authorized by the grant of the easement, and have adversely affected the plaintiff's property rights. That is "burden" enough.

The defendant's remaining contentions do not require any extended discussion. Whether the conduit in question is a "natural watercourse" was a factual question for the master to determine. We have noted that the defendant did not appeal from the interlocutory decree confirming the master's report. Nor are we inclined to speculate on a possible future dispute with the Commonwealth in regard to the right of the Commonwealth to make repairs to the conduit running under the cement floor of the plaintiff's new building.

The plaintiff is entitled to injunctive relief.

*Final decree affirmed with costs*
*of appeal.*