John L. Larkin, J.
Plaintiffs move for summary judgment under CPLR 3212. Defendants cross-move for summary judgment under CPLR 3212 (subd. [b]). The parties are agreed, and it appears from the record, that no material issue of fact exists and that only questions of law are presented.
This action was instituted by the plaintiffs pursuant to article 15 of the Real Property Actions and Proceedings Law to seek a determination that an easement held of record by defendants in certain real property located in Saratoga County, of which plaintiffs are the owners of the underlying fee interest, has been terminated and that their fee title is free and unencumbered by the easement. Defendants have denied the material allegations of the complaint herein and have counterclaimed for a determination that the easement is still in effect and that plaintiffs hold the underlying fee subject to the easement.
The complaint alleges five causes of action. The first alleges that a certain deed, dated February 4,1964, whereby the United States of America conveyed to the State its title to the easement was ineffective in that at the time of the conveyance, the United States no longer had title to the said easement. The second, third, fourth and fifth causes of action allege that, by reason of various acts of the defendants, the easement has been abandoned by the defendants.
The tract of land which is the subject of the proceedings herein, is known as the Malta Test Station (the station) and is *853 situated in the Towns of Malta and Stillwater in Saratoga County, New York, in a woodland tract known locally as the Luther Forest.
The United States leased the land comprising the station in 1945 and maintained various interests in the premises, which were used for research and test activities involving rockets, space vehicles and weapons and various defense-related programs, until March 3,1955.
On March 3, 1955, the United States of America, by exercise of its power of eminent domain, took from the Luther family, from whom the plaintiffs have derived their interest in the premises herein, the following interests in real property:
(a) A fee interest in a tract containing 165.36 acres, said tract being designated as Tract A-100;
(b) A perpetual and assignable easement interest for roadway purposes in a tract containing 8.57 acres, said tract being designated as Tract A-100-E-1;
(c) A perpetual and assignable easement for powerline purposes in a tract containing 5.19 acres, said tract being designated as Tract A-100-E-2;
(d) A perpetual and assignable easement for the establishment, operation, maintenance and use of a safety area in, on, across and over certain land designated and described as Tract A-100-E-3, containing 1819.80 acres and described as circular in shape with a radius of one mile from the center of a test pit located within Tract A-100 (the 165.36-acre tract).
The said condemnation in 1955 resulted in protracted litigation in the United States District Court for the Northern District of New York, in civil proceeding No. 4702. A principal issue at the trial concerned the amount of damages sustained by the owners of the fee subject to the perpetual and assignable easement taken in the 1,819 acres in Tract A-100-E-3. In United States v. Certain Lands Situate in Towns of Malta and Stillwater in Saratoga County (N. D., N. Y., Dist. Ct., Div. No. 4702), the landowners were awarded damages for the taking of the easement of $136,485, plus interest (out of a total of $339,881, plus interest, awarded in respect of the entire 1955 taking). In 1965 the court confirmed this finding.
On November 25, 1960 the Army, in accordance with the statutory procedural requirements of sections 471 to 484 of title 40 of the United States Code and the regulations promulgated thereunder, filed with the Federal General Services Administration a report of excess real property with respect to the station. Annexed to the said report is the disposal report of the Army *854 Chief of Engineers, dated October 6, 1960, in which it is stated in part: “ 3. The Department of the Army has determined that it has no current or foreseeable requirement for the Malta Test Station. Inasmuch as neither the Department of the Navy nor Air Force has any current forseeable need for it, the property is excess to the current and foreseeable requirements of the Department of Defense.”
Thereafter, on November 5, 1962, the General Services Administration issued a notice of surplus determination of Government property which set forth the fact that the approximately 165.36 acres of fee-owned land and three easements comprising the station had been determined to be surplus Government property “ available for disposal pursuant to the provisions of the Federal Property and Administrative Services Act of 1949 (40 U. S. C. 471, et seq.) and applicable regulations ”,
The defendant, People of the State of New York (the State), acting on behalf of the defendant, New York State Atomic and Space Development Authority (the Authority), purchased the station (fee in Tract A-100 and perpetual and assignable easements in Tracts A-100-E-1, A-100-E-2 and A-100-E-3) at a public sale conducted in December, 1963, and the property was conveyed by the Federal Government to the People of the State of New York by quitclaim deed dated February 4, 1964.
Plaintiffs, in their first cause of action, allege that the safety area easement (Tract A-100-E-3) was acquired by the Federal Government (the Government) specifically for “ ordnance testing purposes ”, and they further allege that this operation at the site was expressly abandoned by the Government. Plaintiffs allege that by reason of the discontinuance of such use, by reason of the finding by the United States Department of the Army that it had no further use for the station and its consequent declaration that said property was “ excess ” to its needs, and by reason of the finding by the United States General Services Administration that no further use of ¡said property was required by any department or agency and its consequent declaration that said property was “ surplus ”, the said safety area easement was terminated as a matter of law prior to the conveyance by the Government to the State.
Plaintiffs’ assertion that the station was acquired for the specific, limited purpose of ordnance testing, is not supported by the facts. In Federal condemnation proceedings, the declaration of taking is the operative document and sets forth the public use for which the land is taken as well as setting forth the extent and nature of the rights acquired by the *855 condemnor (Ú. S. Code, tit. 40, § 258a). Paragraph (1) (b) of the declaration of taking herein, in conformity with subdivision 1 of the above-quoted statute, stated the purpose for the taking as follows: ‘ * The land is necessary adequately to provide facilities for the use of the Department of the Army and further military uses incident thereto. The said land has been selected for acquisition by the United States for use in connection with the Malta Test Station and for such other uses as may be authorized by Congress or Executive Order.” Therefore, it is clear that even if it were true that the primary purpose for the acquisition of the station by the Government was ordnance testing and that such use was subsequently discontinued or abandoned, • the Government had the right to devote the property to other military uses, to ‘ ‘ such other uses ’ ’ as were deemed appropriate, and even to sell it to defendants under the broad language of the declaration of taking.
But the evidence which has been submitted to the court indicates that from the time of the establishment of the station in 1945 until its sale to defendants in February, 1964, the station was, in fact, used for “ ordnance testing” as well as for a wide variety of military and defense activities. The affidavit of Albert Wilson, Director, Real Property Division, Property Management and Disposal Service, of the United States General Services Administration, Region II, recites that he has held said position since July, 1961. He states: “ During this period [1945 to February 4, 1964], the station was used for a wide range of rocket and weapon testing programs and research activities performed for agencies of the Government and for defense contractors ”. The affidavit of Donald H. Shafer, Manager of Field Operations for the New York State Atomic and Space Development Authority and in charge of operations at the Malta Test Station, recites that deponent first became associated with the station in 1952 while employed by the General Electric Company. ' He states: f ‘ From 1952 to 1964, the station was used continuously and without interruption by the Federal Government in connection with a variety of missile and rocket testing programs for Federal military and space agencies and for weapon testing programs ”. (Emphasis supplied.)
Plaintiffs rely on the Government’s declarations of “ excess and surplus ” and argue that such statements, ipso facto, prove abandonment. Such reliance is clearly misplaced. The affidavit of Albert Wilson demonstrates that a ‘ ‘ Determination of Surplus ” is the necessary prerequisite to the sale or other dis *856 position of property of the Government by the General Services Administration and, far from evidencing an intention on the part of the Government to abandon or surrender any interest which it originally acquired, evidences the contrary. The determination evidences the availability of the property for disposal and the Government’s readiness to transfer its interests to a nofiFederal grantee.
The many cases which have been cited by plaintiffs as to cessation of purpose and abandonment of easements are inapplicable because of the failure by plaintiffs to demonstrate that, during the time of its ownership of the safety area easement in the tract of 1819.80 acres (Tract A-100-E-3), the Federal Government failed to comply with the public purposes set forth in the declaration of taking by. which the easement and the other lands comprising the station were appropriated.
Plaintiffs allege in the second, third, fourth and fifth causes of action of the complaint that, by reason of four acts on the part of the defendants, the safety area easement was abandoned by the defendants.
The original declaration of taking herein was amended on July 17,1957 “ for the sole purpose of clarifying the nature and extent of the easement interests acquired in Tract A-100-E-3 and removing ambiguities, if any, with respect thereto ”. The amended clause referring to the safety area states that:
‘ ‘ only the following rights are held and may be exercised by the Government * * *
“ 1. The right to prohibit human habitation.
“2. The right to remove buildings presently or hereafter being used for human habitation.
“ 3. The right to prohibit hunting.
‘ ‘ 4. The right to post signs indicating the nature and extent of the control over the said Tract A-100-E-3.
“ 5. The right of ingress and egress over said land for purposes of exercising the said rights.”
Such rights and privileges as to the right to farm, graze, conduct timber operations, fish and to take profit a prendre were reserved to the owners of the underlying fee. The exact nature of the said easement, subsequently assigned to the defendants as set forth herein, is central to plaintiffs’ second and fifth causes of action.
The action of defendants which is the basis of plaintiffs’ second cause of action, is the appropriation in fee by the State of 273.066 acres of land adjacent to the station and almost entirely within the safety area easement in August, 1968 (the *857 1968 parcel). It is alleged that because the Authority has permitted the erection of one building on the 1968 parcel and allowed human habitation in connection therewith, “proof positive ” exists that “ the easement both in the 273 acre piece of land and in the balance of the safety easement area was not needed for utilization of the dominant fee area of 165 acres (Tract A-100) ”. The affidavit of James G. Cline, Chairman of the Authority, who has held said position since April 13,1970 and has been employed by the Authority in various executive positions continuously since November, 1962, refutes plaintiffs’ argument.
Referring to the Authority’s Seventh Annual Report for 1968-1969, an excerpt of which is annexed to his affidavit, Mr. Cline states that, “ it was the purpose of the Authority in appropriating the additional land * * * to expand the programs which were then being carried on at the station and for new related nuclear and aerospace activities ”. He further states that, ‘1 Except to the extent occupancy of the structure is permitted by such Lease, the Authority has expressly retained the right to enforce the Safety Area Easement over the leased premises ”.
The action of defendants which is the basis of plaintiffs ’ fifth cause of action is the preparation by the Authority of a master plan, involving the use of the safety area easement for trails for hiking and cross-country skiing. Plaintiffs allege that the plan would ‘1 introduce activities which contemplated extensive human involvement in an area in which human activities were forbidden”. Plaintiffs conclude that such demonstrated an intention to abandon the restrictive easement. As pointed out in the Cline affidavit, ‘ ‘ Under the express terms of the Safety Area Easement (set forth above) the Federal Government did not acquire and the Authority does not now have, the right to exclude the public from hiking through the area covered by the Safety Area Easement ’ ’. Although the Government received the right ‘ ‘ to prohibit human habitation ’ ’, nothing was said about hiking or skiing. In fact, the right to fish on the lands in question was expressly reserved to the landowners. Hiking and skiing seem akin to fishing in terms of use of land, and none of these recreational uses seem inconsistent with the use of the dominant estate.
The action of defendants which is the basis of the plaintiffs’ third cause of action is the leasing, by instrument dated April 1,1972, by the Authority to the Wright-Malta Corporation of the 165-acre fee-owned parcel and the appurtenant roadway and power line easements, but not inclusive of the safety area ease *858 ment, coupled with, the express statement by the Authority that the lease did not include the latter easement. Plaintiffs conclude that such actions constituted proof that the use of the dominant fee did not require the retentioti of the easement and was thereby terminated as a matter of law.
In the Shafer affidavit, Donald H. Shafer makes the following sworn statement as to the Authority’s enforcement of the negative covenants contained in the easement: “I have continuously since 1964 personally enforced the restrictions against hunting on the land subject to that Easement ”. He further states that to his knowledge, lands subject to the easement have not since 1964 been used for human habitation nor have buildings for human habitation been erected thereon.
Mr. Cline states in his affidavit that one of the principal reasons that the Authority did not lease its rights in the safety area easement to Wright-Malta, was that while such lease was under negotiation, discussions were being conducted with representatives of plaintiffs concerning plaintiffs’ request that the Authority consider a sale of all or part of the safety area easement. Cline states that the Authority was willing to consider such possibility under “ appropriate conditions ”. The Authority 1 ‘ would reserve * # * the right for itself and its successors and assigns, in perpetuity, to operate the Station for industrial, commercial, scientific and technological activities * * * notwithstanding the possible impact of such activities on the use and enjoyment of the fee underlying the Safety Area Easement Such statement is clearly in contrast to plaintiffs’ ipso facto conclusion that the lease of the station excepting the safety area easement demonstrated a complete abandonment of the easement and that the easement was no longer necessary and terminated as a matter of law.
Plaintiffs ’ fourth cause of action is based on the action of the defendant Authority in sending a letter to plaintiffs indicating that for proper consideration, the Authority was willing to sell all or part of the safety area easement. The invalidity of plaintiffs’ claims of abandonment and termination as a matter of law, by reason of failure of necessity of the easement to use the dominant fee, has been demonstrated in the discussion herein as to plaintiffs’ third cause of action. A willingness to sell upon the imposition of numerous conditions to safeguard future use of the dominant fee interest is a far cry from an abandonment of the easement or a demonstration of its termination as necessary to the use of the dominant estate.
*859 The main thrust of the argument of plaintiffs based on the four actions of defendants discussed hereinabove, is that the •safety area easement was terminated as a matter of law because there was no longer a necessity for its existence. Although the facts adduced do not support such contention, even if they did, “ an easement created by grant [as in the instant case] can only be extinguished by abandonment, conveyánce, condemnation, or adverse possession ” (Gerbig v. Zumpano, 7 N Y 2d 327, 330). Thus, mere cessation of necessity Cannot, as a matter of law, extinguish an easement created by grant.
The undisputed facts of this case fail, as a matter of law, to support a claim of abandonment. “ In order to prove an abandonment it is necessary to establish both an intention to abandon and also some overt act or failure to act which carries the implication that the owner neither claims nor retains any interest in the easement [citations omitted]. Furthermore, acts evincing an intention to abandon must be unequivocal. They must clearly demonstrate the permanent relinquishment of all right to the easement ” [citation omitted], (Gerbig v. Zumpano, supra, p. 331). The four acts of the Authority which are the basis for plaintiffs’ second, third, fourth and fifth causes of action, do not evidence intention on the part of the Authority to relinquish the safety area easement, nor has the Authority performed any acts whatsoever which “ clearly demonstrate ” an “ unequivocal ” intention to permanently relinquish the safety area easement.
On the undisputed facts, plaintiffs have failed to demonstrate that valid title to the safety area easement did not pass from the Government to the State by deed of February 4, 1964 and have similarly failed to show that the said easement has been subsequently abandoned by the defendant State or defendant Authority herein. Accordingly, plaintiffs’ motion for summary judgment is denied, in all respects, and summary judgment is granted to defendants.