SIDNEY L. BOORSTEIN & another[1] *vs.* MASSACHUSETTS
PORT AUTHORITY & others.[2]

Suffolk.    December 2, 1975. — April 1, 1976.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, & WILKINS, JJ.

*Easement. Eminent Domain,* Extent of taking. *United States.*

A taking by the United States of "a perpetual easement" in land be-
tween a naval fuel oil pier and a naval fuel oil depot "for the con-
struction, operation and maintenance of a pipe line" gave the
Federal government under Federal law an unconditional, per-
petual, transferable easement for pipeline purposes which was not
conditioned on the continued use of the pipeline by the Federal
government, notwithstanding a recitation in the declaration of tak-
ing that the easement was "to be used ... in connection with" the
depot; the easement was not extinguished by sale of the depot by
the United States and construction of a hotel thereon but continued
as a valid pipeline easement in favor of the purchaser of the pier
and the easement. [15-16]

BILL IN EQUITY filed in the Land Court on September 21,
1972.

The suit was heard by *Randall,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

---

[1] Vincent A. LoPresti.

[2] The other two name defendants, Ramada Inns, Inc., and Wacho-
via Mortgage Company, did not file answers and were defaulted. They
have interests in one terminus of the pipeline easement involved in this
case, the site of the former naval fuel depot.

*Stephen R. Katz* (*Lewis L. Whitman* with him) for the plaintiffs.

*George C. Caner, Jr.* (*Elizabeth Paine* with him) for Massachusetts Port Authority.

WILKINS, J.    The plaintiffs, owners of three vacant parcels of land in East Boston, brought this action in the Land Court to quiet title to those premises. At issue is whether a pipeline easement taken in 1943 by the United States of America, and now purportedly held by the Massachusetts Port Authority (authority), still exists. The case was presented on a stipulation of facts which incorporated various documents. The judge ruled that the authority owned a pipeline easement over the plaintiffs' land and that the easement had not been extinguished. We affirm the judgment which dismissed the action.

On March 5, 1943, pursuant to Congressional authorization, the acting Secretary of the Navy executed and filed in the United States District Court for the District of Massachusetts a declaration of taking of an easement "to be used as a pipe line right of way in connection with the Naval Fuel Depot, East Boston, Massachusetts." The declaration stated that the "estate hereby taken . . . is a perpetual easement for the construction, operation and maintenance of a pipe line . . . ." One week later, a petition for condemnation was filed, and a judgment on the declaration of taking was entered which decreed that "a perpetual easement for the construction, operation and maintenance of a pipe line" would vest in the United States of America on completion of certain procedural steps. The easement ran for about two miles from the land of the naval fuel oil pier, through land now owned by the plaintiffs and through the General Edward Lawrence Logan International Airport (now owned by the authority) to the naval fuel depot on the Chelsea River. The pipeline was constructed along the easement taken for that purpose.

In the fall of 1964, the United States sold that portion of the naval fuel depot which abuts the easement. Ramada Inns, Inc., which now owns that land subject to a mort-

gage, has constructed a hotel there. In January, 1965, the United States sold the fuel oil pier to the authority, purporting to transfer the easement as well. Although the authority has not used the pipeline since it acquired the easement, the parties agree that the authority has not abandoned any rights it may have acquired in the easement.

The plaintiffs argue that the easement has been extinguished, relying on several principles of State law. They characterize the easement as "appurtenant" to the dominant estate, the fuel depot property. They observe that such an easement may not be conveyed apart from the property which it benefits,[3] nor may it be used for the benefit of land other than the dominant estate.[4] They point out further that, when the purpose of such an easement no longer may be fulfilled, the easement must be treated as extinguished.[5] Applying these principles to the case before us, the plaintiffs note that the authority does not own any portion of the former naval fuel depot property, that a hotel has been constructed on that site, and that the easement cannot be used now for the specific purpose which prompted the Federal government to acquire it.

The authority replies that the principles of State law on which the plaintiffs rely have no application here because Federal law applies. The authority contends that under Federal law the easement is a perpetual easement for a pipeline, capable of existence and transfer wholly apart from any other land. It adds that, if this special public easement is to be analogized to private easements, it is like "a commercial easement in gross, conventionally transferable independent of any other interest."

The nature of the interest acquired by the Federal government and the transferability of that interest to the au-

---

[3] See *Blood* v. *Millard,* 172 Mass. 65, 70 (1898); 3 H. Tiffany, Law of Real Property § 761, at 213-214 (3d ed. 1939).

[4] *Brassard* v. *Flynn,* 352 Mass. 185, 190 (1967). *Murphy* v. *Mart Realty of Brockton, Inc.,* 348 Mass. 675, 679 (1965).

[5] *Anntco Corp.* v. *Shrewsbury Bank & Trust Co.,* 353 Mass. 250, 253 (1967). *Comeau* v. *Manzelli,* 344 Mass. 375, 381 (1962).

thority are questions to be determined under Federal law. See *United States* v. *93.970 Acres of Land,* 360 U.S. 328, 332-333 (1959); *State Box Co.* v. *United States,* 321 F.2d 640, 641 (9th Cir. 1963); *United States* v. *Certain Interests in Property,* 271 F.2d 379, 384 (7th Cir. 1959); *United States* v. *Kansas City, Kan.,* 159 F.2d 125, 129 (10th Cir. 1946).

By its actions in 1943, the Federal government acquired an unconditional, perpetual public easement for pipeline purposes which was not conditioned on the continued use of the pipeline by the Federal government. The recitation in the declaration of taking that the easement was "to be used as a pipe line right of way in connection with the Naval Fuel Depot" did not limit the Federal government's interest in the easement. The proposed use was recited in the declaration of taking not as a limitation but in order to demonstrate the existence of a public purpose for the condemnation and perhaps to assist in the assessment of damages. See *United States* v. *Sixteen Parcels of Land,* 281 F.2d 271, 274 (8th Cir. 1960); *United States* v. *0.01 Acre of Land,* 310 F. Supp. 1379, 1385-1386 (D. Md. 1970). Those words of purpose did not qualify the interest acquired through the judgment entered by the Federal court in the condemnation proceedings. Cf. *United States* v. *Chartier Real Estate Co.,* 226 F. Supp. 285, 287-288 (D.R.I. 1964). The perpetual easement acquired is an independent interest in real estate which is not dependent on the government's owning other real estate which may be characterized as a dominant estate. Although the Federal government might have acquired an easement appurtenant to its fuel depot, as the plaintiffs argue, the fact is that the Federal government acquired a broader interest in the land now owned by the plaintiffs.

The government's discontinuance of the use of property acquired by eminent domain does not prompt title to revert to the owner, or successor in title, of the condemned estate. *Higginson* v. *United States,* 384 F.2d 504, 507 (6th Cir. 1967), cert. denied, 390 U.S. 947 (1968), and cases cited. The Federal government may sell its interest in

property which it has acquired by condemnation and subsequently ceased to use. See *United States* v. *Kansas City, Kan.,* 159 F.2d 125, 129 (10th Cir. 1946) (transfer of perpetual easement for transmission lines); *Mackay* v. *People,* 75 Misc. 2d 851, 855 (Sup. Ct. 1973) aff'd mem., 45 App. Div. 2d 900 (N.Y.), appeal denied, 35 N.Y.2d 644 (1974) (fee and easements acquired by State from Federal government). See also, specifically as to this interest in land, the act of March 27, 1942, tit. II, ch. 199, § 201, 56 Stat. 177, which provided that the government could acquire by condemnation "any real property, temporary use thereof, or other interest therein" and thereafter "dispose of such property or interest therein by sale, lease, or otherwise . . . ."

Because the interest was perpetual and capable of transfer, we conclude that the authority has a valid easement for pipeline purposes over the plaintiff's land. The judge of the Land Court was correct in dismissing the action.[6]

*Judgment affirmed.*

---

[6] Our attention to Federal law in answering the issues before us should not be understood to imply that the result we reach would be any different under State law. In Massachusetts, an easement acquired by eminent domain (such as for public travel or for water or sewer purposes) need not be associated with some publicly owned real estate. See *Spear* v. *Bicknell,* 5 Mass. 125, 129 (1809) (an easement for the public described as "a *real* franchise holden by the Commonwealth for the benefit of all the citizens"); 3 Nichols, Eminent Domain § 9.2 [2], at 273 (rev. 3d ed. 1975). Easements, perhaps acquired by eminent domain but not held by a governmental agency, such as easements for railroad, telephone, or oil, gas, or water pipeline purposes, may be created and conveyed in gross (i.e., without an appurtenant or dominant estate). See *Goodrich* v. *Burbank,* 12 Allen 459, 461-462 (1866). Cf. *Chase* v. *Sutton Mfg. Co.,* 4 Cush. 152, 167-168 (1849); Restatement: Property §§ 489-491 (1944). The basic question where the interest was acquired by eminent domain is what interest the taking authority intended to acquire as shown by the relevant documents.