MARK LEVY, trustee,[1] & others[2] *vs.* PATRICIA A. REARDON, trustee,[3] & others.[4]

No. 95-P-526.

Norfolk. October 4, 1996. - August 27, 1997.

Present: BROWN, IRELAND, & LENK, JJ.

*Easement. Real Property,* Condominium, Easement. *Condominiums,* Master deed.

No language in a condominium master deed reserved to the declarants any right or interest pursuant to which they could grant an easement burdening the condominium for the benefit of certain lots originally within the condominium premises [435-437]; moreover, where there was common ownership of the dominant and servient estates at the time the easement was purportedly granted, no valid easement could exist [437].

A "removal" of certain lots from the common area of a condominium constituted a division of the common area in violation of G. L. c. 183A, § 5(c), where it was done without the consent of three-quarters of the unit owners and all of the affected lien holders as required by G. L. c. 183A, § 19. [437-440]

CIVIL ACTION commenced in the Superior Court Department on May 24, 1991.

Motions for summary judgment were heard by *Thomas E. Connolly,* J., and the case was heard by *Judith A. Cowin,* J.

*Walter H. McLaughlin, Jr.,* for the defendants.

*Robert M. Bonin (Mardic A. Marashian* with him) for the plaintiffs.

LENK, J. The plaintiffs, trustees of Summit Place Condominium Trust (Summit), brought this action for declaratory and

---

[1] Of the Summit Place Condominium Trust.

[2] Denise Nelson, Susan Bullard, Susan Osborn and Philip Giordano, also trustees of Summit Place Condominium Trust.

[3] Of the Hilltop Gardens Condominium Trust.

[4] Dennis O'Day, Peter F. McAteer, Alicia M. Boucher and Madeline E. Brown, also trustees of Hilltop Gardens Condominium Trust.

injunctive relief claiming that Summit has a valid easement permitting its residents to use a swimming pool and associated facilities located at the adjacent Hilltop Gardens Condominium Trust (Hilltop), and that Hilltop's trustees are without authority to prevent Summit unit owners access to and use of the pool. Hilltop denied the validity of the asserted appurtenant easement contending, among other things, that (1) the Hilltop declarants granted the asserted easement without authority, and (2) because Summit was created by the removal of common area from Hilltop in violation of G. L. c. 183A, the asserted easement is invalid in view of the unity of title of the dominant and servient estates. A Superior Court judge preliminarily enjoined Hilltop from preventing Summit residents access to and use of the pool. On cross motions for summary judgment, the judge determined, adversely to Hilltop, that the removal of land which purportedly gave rise to the contested easement did not violate the provisions of G. L. c. 183A, and she awarded Summit partial summary judgment. After trial, a different Superior Court judge declared that the swimming pool easement was validly created and in conformity with G. L. c. 183A. Accordingly, the judge enjoined Hilltop permanently from interfering with access to and use of the swimming pool by Summit owners, and ordered Hilltop to open the pool for the season. Hilltop appealed.

*Background facts.* On January 24, 1986, Max B. Brenner and William B. Leatherbee, Jr., as trustees of Valley Gardens Development Trust, created Hilltop Gardens Condominium when they recorded the Hilltop master deed. At that time, the premises consisted of existing garden apartments and three one-family house lots denominated Lots C, D, and E. Brenner and Mark Levy were the original Hilltop trustees; Brenner and Leatherbee were the Hilltop declarants. As owners of one hundred percent of the Hilltop common area interest, the declarants thereafter executed two amendments to the Hilltop master deed which were without substantive consequence. On May 13, 1987, however, the Hilltop declarants, acting pursuant to paragraph 14 of the master deed,[5] recorded a partial removal instrument which purportedly "removed" Lots C, D, and E

---

[5]Paragraph 14 states, in relevant part:

"*PHASING PROVISIONS. Declarants' Reserved Rights to Construct and Add Future Phases.*

"The Condominium is planned to be developed as a phased condominium . . . . In order to permit and facilitate such development, the Declarants, for

from Hilltop and reserved an easement for the benefit of those lots permitting access to and use in common with the Hilltop unit owners of, inter alia, the swimming pool. At the time this "removal" took place, approximately seventy of the one hundred forty-four Hilltop units had been sold to third parties. Brenner and Levy, as Hilltop trustees, assented to and acknowledged the partial removal instrument. On the same date, the Hilltop declarants amended the Hilltop master deed such that paragraph 2, "Description of Land," would reflect that the three lots had been removed from Hilltop.

Almost one year later, on May 4, 1988,[6] Valley Gardens trustees Brenner and Leatherbee created Summit Place Condominiums (Summit) by recording its master deed. The Summit master deed names Brenner and Levy as Summit trustees, describes its premises as consisting of land matching the description of land formerly of and removed from Hilltop, i.e., Lots C, D, and E, and makes reference to the easement purportedly created in 1987 for the benefit of Lots C, D, and E,

themselves and all their successors and assigns, hereby expressly reserve the following rights and easements:

"(A) The Declarants hereby reserve for themselves, their heirs, successors and assigns, *the right to remove from the land subject to the within Condominium the parcels known as [Lots C, D, and E]* . . . .

"The Declarants hereby expressly reserve for themselves, their heirs, successors and assigns the right and easement to construct, erect and install on the land on which the Condominium is located . . . :

"(1) Additional Building(s) . . . ;

"(2) Additional roads, drives, parking spaces and areas, walks and paths;

"(3) . . . [Fences];

"(4) . . . [L]ines, equipment and installations . . . for the furnishing of utilities; and

"(5) All and any other buildings, structures, improvements and installations as the Declarants shall determine to be appropriate or desirable to the development of the Condominium as a phased condominium." (Emphasis supplied.)

[6]Although the dates of recording are not part of the record appendix, Summit's brief on appeal states that the partial removal document was recorded simultaneously with the Summit master deed, even though the partial removal document had been executed approximately one year before.

permitting Summit residents the use of Hilltop's pool. Hilltop unit owners first received notice of the removal of the lots and the creation of an independent condominium, i.e., Summit, by letter in September, 1988, four months after the partial removal instrument and the Summit master deed had been recorded. Brenner and Leatherbee, as Hilltop declarants, recorded a confirmatory "removal" on August 6, 1992, after this suit was commenced.

Initially, both Hilltop and Summit residents shared the use of the pool and associated expenses, but after several years this cooperative spirit waned. In 1991, Hilltop asked Summit to pay certain expenses prior to the pool opening. Summit objected that there was insufficient documentation to justify the amounts, and refused to pay Hilltop in advance. In 1994 the Hilltop trustees determined that Summit owed them approximately $10,000, and the Hilltop unit owners voted to withhold pool passes from Summit residents, effectively barring Summit residents from using the pool. This lawsuit followed.

*Discussion.* Summit seeks to enforce a nonexclusive appurtenant easement[7] to use the swimming pool on Hilltop's premises. "[T]he party asserting an easement . . . ha[s] the burden of proving the nature and extent of any such easement." *Foley* v. *McGonigle,* 3 Mass. App. Ct. 746 (1975). The sole issue before us is whether the contested easement is valid. We conclude that it is not. It does not meet either the prerequisite that the grantor have the legal right to convey such an easement by express grant or that there exist dominant and servient estates in separate ownership. *Goldstein* v. *Beal,* 317 Mass. 750, 754 (1945). To the contrary, we conclude that the Hilltop declarants had no right to grant such an easement and, because Lots C, D, and E were removed from Hilltop common area in violation of G. L. c. 183A, there was unity of title in the dominant and servient estates.

---

[7]The pool in question is on Hilltop property and the purported easement is to benefit Summit's land. The language in the partial removal instrument, in the third amendment to the Hilltop master deed, and in the Summit master deed indicate an intent to create an appurtenant easement for the benefit of Lots C, D, and E. We think it clear that the subject easement at issue is appurtenant and not in gross. In this regard, we observe that there is a "general presumption favoring appurtenant easements as distinguished from personal easements (easements in gross)." *Schwartzman* v. *Schoening,* 41 Mass. App. Ct. 220, 223 (1996). See generally *Johnson* v. *Jordan,* 2 Met. 234, 239 (1841).

1. *Right to grant easement.* When the Hilltop declarants executed the partial removal instrument, they purported to grant the easement to the subsequent owner of the removed land. The declarants, of course, had the right to convey only that in which they had an ownership interest. It is true that "a developer may retain a property interest by excluding it from the interest subjected to the condominium." *Strauss* v. *Oyster River Condominium Trust*, 417 Mass. 442, 446 (1994), citing *Beaconsfield Towne House Condominium Trust* v. *Zussman*, 416 Mass. 505, 507-508 (1993). We therefore look to the Hilltop master deed[8] to ascertain whether the declarants had reserved for themselves a property interest in Hilltop prior to their creation of the Hilltop condominium such that they thereafter would have had the right to create an easement for the benefit of Lots C, D, and E.[9]

Our attention in this regard is directed to the first and second sentences of paragraph 14(A) of the Hilltop master deed. The first sentence purports to reserve to the Hilltop declarants the right to "remove" Lots C, D, and E. We discuss in greater detail in the following section this reservation of rights but observe now that such rights as may be reserved by virtue of this sentence concern solely Lots C, D, and E; no reference is made therein to the land burdened by the pool easement. This sentence accordingly cannot be the source of the easement grantor's reserved right. The second sentence reserves certain rights and easements to the declarants personally for the express purpose of "phasing" Hilltop.[10] These rights and easements permit access to Hilltop property for the purpose of construct-

---

[8]Summit relies only upon the Hilltop master deed as the basis for the declarants' reserved right to grant an easement. Neither Summit nor Hilltop argues that there is any other source from which the declarants' reserved right might be derived.

[9]The condominium statute in effect at all pertinent times did not explicitly address the subject of easements over common areas. A subsequent amendment to G. L. c. 183A, § 5(*b*), effective January 1, 1996, allows condominium associations, not declarants, to grant easements over common areas. See St. 1994, c. 365, § 2.

[10]"Phasing of a condominium permits a developer to expand the size and scope of a condominium project in response to market conditions. In a phased condominium development, groups or stages of units are completed over a period of several years and become part of the condominium by successive amendments to the master deed. 'Phasing' is not a statutory term, but is a usage that has grown out of the general enabling provisions of G. L. c. 183A." *Podell* v. *Lahn*, 38 Mass. App. Ct. 688, 689 n.3 (1995).

ing the buildings and improvements comprising future phases of the condominium. The second sentence purports neither to reserve to the declarants the pool easement nor to reserve to them the right to burden Hilltop in the future with an easement.[11] In this regard, it is worth noting that Summit was in any event created as an independent condominium and not as a subsequent phase of Hilltop.[12] The second sentence of paragraph 14(A), concerned as it is with easements pertaining to Hilltop's phased development, accordingly cannot serve as the basis for the declarants' reserved right to create the subject easement.

It has not been made to appear that there is language elsewhere in the Hilltop master deed which reserves to the declarants any right or interest pursuant to which they could grant the subject easement. This case is, therefore, quite unlike the situation in *Commercial Wharf E. Condominium Assn.* v. *Waterfront Parking Corp.*, 407 Mass. 123 (1990), where the declarant of the condominium retained an interest in the form of an appurtenant easement over condominium common area land

[11]Summit does not argue that paragraph 14 specifically reserved to the declarants the right to grant future easements. We do not address whether such a reservation would be consistent with G. L. c. 183A.

[12]The Hilltop master deed describes a form of phased condominium development whereby the declarants submit the entire parcel of land to the provisions of c. 183A together with the first phase of building(s), units and improvements. The declarants retain the right for a period of time to add additional buildings, units and improvements on the same parcel of condominium land on separate phases by means of amendments to the master deed. Title to common area land remains in the unit owners; "[e]ach unit owner is entitled to a proportional, undivided interest in such areas." *Beaconsfield Towne House Condominium Trust* v. *Zussman*, 401 Mass. 480, 483 (1988). See *Kaplan* v. *Boudreaux*, 410 Mass. 435, 438 (1991). Phased development does not ordinarily entail removal of common area land from the condominium, thereby divesting unit owners of their interest in such removed land. Phased development and "removal" are separate and distinct concepts. The removal of land from a condominium must in any event comply with the requirements of G. L. c. 183A, § 19. Subsequent submission of removed land and any constructed buildings thereon to the provisions of G. L. c. 183A results in the creation of a new and independent condominium; this is in stark contrast with phasing where subsequently constructed buildings and improvements become part of the originally formed condominium. See generally Groman, Phasing Condominiums, 48 St. John's L. Rev. 872 (1974); 1 Galvin, Massachusetts Condominium Law c. 2 (MCLE 1988 & Supp. 1996); 2 Crocker's Notes on Common Forms c. 21 (8th ed. MCLE 1995); Massachusetts Conveyancers Association's Guide to the Registries of Deeds, Guidelines for Registered Land Condominiums § 6, at 292 (3d ed. 1996). See also *DiBiase* v. *Jacobowitz, ante* 361 (1997).

for the benefit of the declarant's retained land. The *Commercial Wharf* declarant's retained interest never became part of the common area land because the declarant had recorded the easement prior to recording the master deed which itself was expressly subject to the prior interest. The declarants here, however, took no comparable steps. When the Hilltop master deed was recorded and its land was submitted to G. L. c. 183A, no prior interest in the form of the pool easement had been retained by the declarants and the Hilltop land was not subject to any such prior interest. The absence of any right in the Hilltop declarants to grant the pool easement renders the easement invalid.

2. *Dominant and servient estates.* Even if the Hilltop declarants had retained the right to grant the contested easement, a valid appurtenant easement also requires that there be a dominant and a servient estate. "So long as there was a common ownership of the two parcels there could be no easement in favor of one lot operating as a burden on the other. If any easement came into existence it was only upon a severance of the common ownership." *Goldstein* v. *Beal,* 317 Mass. 750, 754 (1945) (citations omitted). A party cannot have an easement in his own estate in fee. If the removal of land from Hilltop for the purpose of creating Summit was accomplished in violation of G. L. c. 183A, and if the two properties therefore had unity of title, no valid appurtenant easement burdening Hilltop for the benefit of Summit could exist.

The Hilltop trustees argue that the removal of Lots C, D, and E was in violation of several provisions of G. L. c. 183A. Their contention in this regard depends in the first instance upon whether the removed lots were part of Hilltop's common area land. If so, §§ 5(c)[13] and 19,[14] mandating that common area land remain undivided except as set forth in these sections, would apply to the removal of Lots C, D, and E.

[13]General Laws c. 183A, § 5(c), as inserted by St. 1963, c. 493, § 1, states, in relevant part: "The common areas and facilities shall remain undivided and no unit owner or any other person shall bring any action for partition or division of any part thereof, except as provided in sections seventeen, eighteen and nineteen. Any covenant or provision to the contrary shall be null and void."

[14]General Laws c. 183A, § 19(a), as inserted by St. 1963, c. 493, § 1, states, in relevant part: " (a) Seventy-five per cent of the unit owners, or such greater percentage as is stipulated in the by-laws, may remove all of a condominium or portion thereof from the provisions of this chapter by an instrument to that effect, duly recorded, provided that the holders of all liens

Relying on *Commercial Wharf, supra,* the Summit trustees argue that since Lots C, D, and E were subject to the provisions of paragraph 14 of the Hilltop master deed, those lots were never submitted to G. L. c. 183A and were thus never part of the Hilltop common area. The facts of record, however, do not support this contention. Paragraph 5 of the Hilltop master deed as originally recorded refers to an Exhibit A for the "Description of Common Areas"; the latter specifically includes Lots C, D, and E. Moreover, both Hilltop and Summit acknowledge that the land initially described was not subject to any prior recorded easement or reservation. *Commercial Wharf* is of no assistance to Summit. There, the declarant, unlike the Hilltop declarants, recorded a declaration of easements and covenants prior to recording the master deed. The retained interests, never made subject to c. 183A, were also never part of the condominium common area. Here, the evidence of record is clear that Lots C, D, and E were part of Hilltop common area ab initio.

The "removal" of Lots C, D, and E thus divided the Hilltop common area.[15] This division violates G. L. c. 183A, § 5(*c*), unless it meets the requirements of § 19, permitting removal with the consent of seventy-five percent of the unit owners and all affected lien holders.[16] Section 19 also requires that ownership of the removed land remain in the unit owners as tenants in common unless otherwise provided in the removal instrument. The Hilltop declarants removed Lots C, D, and E from Hilltop in disregard of certain of these requirements.

upon any of the units affected consent thereto by instruments duly recorded. Upon such removal, the condominium, including all the units, or the portion thereof thus removed shall be owned in common by the unit owners and the organization of unit owners shall be dissolved, unless it is otherwise provided in the removal instrument. The undivided interest in the property owned in common held by each unit owner shall be equal to the percentage of the undivided interest of such owner in the common areas and facilities."

[15]Although Summit and Hilltop agree that Lots C, D, and E were "removed" from Hilltop, the chain of title for these lots is not clear from the record. The partial removal instrument was executed before any buildings were constructed on the removed lots, and was not recorded until approximately one year later, at the same time the Summit master deed was recorded. Hilltop and Summit agree, however, that after the Lots were removed, title was held by the Valley Gardens Development Trust, and that the land was resubmitted to c. 183A by the recording of the Summit master deed.

[16]The Hilltop master deed does not specify a higher percentage as the statute would allow.

Section 19 requires the consent of at least seventy-five percent of the unit owners to the partial removal instrument.[17] The Hilltop unit owners (other than the declarants) were not asked for and never expressed approval of the "removal." Summit argues, however, that express individual unit owner consent was not needed because the Hilltop declarants removed the land as attorneys-in-fact for all Hilltop unit owners.[18] They argue that because of other provisions in Hilltop's master deed,[19] the Hilltop unit owners, upon acceptance of their unit deeds, were deemed to have granted power of attorney to the declarants to assent on their behalf to the removal thereafter effectuated. We need not decide whether such a power of attorney provision is the equivalent of unit owner consent for purposes of removing land from the condominium in compliance with § 19, since the purported "removal" violated § 19 in two other respects.

The removal of Lots C, D, and E, as part of the Hilltop common area, of necessity affected all Hilltop units. Section 19 requires the consent of all Hilltop unit lien holders; none of the lien

[17]At the time of the "removal," unlike the time when the first two amendments to the Hilltop master deed were recorded, approximately seventy of the one hundred forty-four (forty-eight and six-tenths percent) condominium units were owned by people other than the declarants. The declarants' consent, as unit owners of seventy-four units, could not by itself satisfy the seventy-five percent requirement.

[18]The original partial removal instrument does not mention this power of attorney, but merely asserts that the declarants are exercising their reserved rights as declarants pursuant to paragraph 14 of the Hilltop master deed. After this lawsuit commenced, Summit recorded a "Confirmatory Partial Removal" document which states that its sole purpose is to confirm that, at the time the declarants executed the original partial removal instrument, the declarants were executing it both as declarants and as attorneys-in-fact for each Hilltop unit owner.

[19]Paragraph 14 provides, in relevant part: "In the event that, notwithstanding the provisions of this paragraph 14 to the contrary, it shall ever be determined that the signature of any Unit Owner, other than the Declarants, is required on any amendment to this Master Deed which adds or removes additional land and/or new phase(s) to the Condominium, then the Declarants shall be empowered, as attorneys-in-fact for the owner of each Unit in the Condominium, to execute and deliver any such amendment by and on behalf of and in the name of each such Unit Owner; and for this purpose each Unit Owner, by the acceptance of the deed to his or her Unit, whether such deed be from the Declarants as grantor or from any other party, constitutes and appoints the Declarants as his or her attorney-in-fact. This power of attorney is coupled with an interest, and hence shall be irrevocable and shall be binding upon each and every present and future Owner of a Unit in the Condominium."

holders so consented.[20] Section 19 also mandates that removed land will thereafter be owned in common by the unit owners unless the removal instrument specifies differently.[21] The ownership procedure suggested in the statute contemplates some benefit to the unit owners in exchange for the divestiture of their interests in condominium common area. After "removal" here, however, title to Lots C, D, and E did not remain in the Hilltop unit owners and the unit owners did not receive any compensation for the removed land.

The "removal" of Lots C, D, and E therefore did not comply with clear statutory requirements, rendering the removal invalid. It is one thing to invent devices — such as phasing of condominiums — that fall under the umbrella of c. 183A, an enabling statute; it is another to attempt to do that which is prohibited by clear legislative mandate. See *Barclay* v. *DeVeau,* 384 Mass. 676, 682 (1981). As a result, title to the removed land would remain in Hilltop and, there then being unity of title in Hilltop and Summit, the appurtenant easement cannot exist as a matter of law.

*Conclusion.* The pool easement is invalid and unenforceable for two independent reasons: (a) the Hilltop declarants did not have the right to grant the easement; and (b) the removal of Lots C, D, and E, having been accomplished in violation to the requirements of G. L. c. 183A, §§ 5(c) and 19, is without effect, and the easement in question cannot exist as matter of law because of the resulting unity of title. For these reasons, we vacate the judgment entered below and remand the matter to the Superior Court for entry of a declaratory judgment consistent with this opinion.

*So ordered.*

---

[20]Summit does not contend that the Hilltop lien holders consented to the partial removal instrument, arguing instead that none of the lien holders complained about the removal. Absence of complaint does not meet the statutory requirement that lien holders "consent thereto by instruments duly recorded." G. L. c. 183A, § 19(a).

[21]The partial removal instrument did not specify a grantee. See note 15, *supra.*