OMAR F. HAMOUDA vs. MARY HARRIS.

No. 05-P-79.

Suffolk. January 6, 2006. - April 6, 2006.

Present: GREENBERG, COWIN, & MILLS, JJ.

*Real Property,* Deed, Easement. *Deed,* Construction. *Easement.*

In a dispute between neighbors over the continued existence and permissible extent of use of a driveway easement, the circumstances attendant to the creation of the easement demonstrated that the grantor of the easement did not intend to benefit the whole lot, but the removal of a garage from that lot did not extinguish the easement, where the continued existence of the garage was not essential to the continued existence of the right of way for the purpose of parking two vehicles on the footprint of the original garage [25-28]; moreover, there appeared no reason to distinguish between the parking of vehicles for residential use and the parking of vehicles for commercial use, but the limit on the number of vehicles was two [28-29].

CIVIL ACTION commenced in the Land Court Department on August 29, 2000.

The case was heard by *Leon J. Lombardi*, J.

*Paul Killeen* for the plaintiff.

*Kevin P. Crane* for the defendant.

MILLS, J. In a dispute between two neighbors in Cambridge over the continued existence and permissible extent of use of a driveway easement, a judge of the Land Court ruled that the easement had not been extinguished, and that it was created to benefit an entire lot and was not limited to the particular purpose of gaining access to a garage.

1. *The facts.* The plaintiff, Omar F. Hamouda, owns a lot containing 2,911 square feet, on Third Street in Cambridge. A dwelling and garage are located on his lot (Hamouda lot). The defendant, Mary Harris, owns an adjoining lot containing 2,649 square feet, improved by a building which is used for commercial office purposes (Harris lot). The lots are shown on an

appended sketch that contains the essential details of a "Plan Showing Easement for Driveway," dated April 10, 1954 (plan). See Appendix.

In 1954, both lots were owned by Alice E. McElroy, each supporting a two-family dwelling and a two-bay garage. McElroy conveyed both properties as part of a single transaction. The Harris lot was originally deeded to Emily Campbell, and the Hamouda lot to William J. Kervick and Mary J. Kervick. The following descriptive language appeared in the Campbell deed:

> "A certain parcel of land with the buildings thereon . . . , being shown . . . on a 'Plan Showing Easement for Driveway' . . . dated April 10, 1954 . . . to be recorded herewith . . . , bounded and described as follows:
>
> > [the deed contains a description, by boundary, of the 2,649 square foot lot]
>
> "Said premises being known as and numbered 229-231 Third Street in the present numbering of said street.
>
> "Included in this conveyance as appurtenant to the above described premises is a right of way for motor vehicle travel from the garage located on said premises to Bent Street over that portion of the grantor's adjoining land . . . marked 'Right of Way,' as shown on said plan."

The following language appeared in the Kervick deed:

> "A certain parcel of land with the buildings thereon . . . , being shown . . . on a 'Plan Showing Easement for Driveway' . . . dated April 10, 1954 . . . to be recorded herewith . . . , bounded and described as follows:
>
> > [the deed contains a description, by boundary, of the 2,911 square foot lot]
>
> "Said premises being known as and numbered 233-235 Third Street in the present numbering of said street.
>
> "That portion of the above premises marked 'Right of Way['] on said plan is conveyed subject to a right of way for motor vehicle travel to and from the garage located on the adjoining property . . . as set forth in a deed of this grantor to Emily Campbell, duly recorded . . . ."

The Campbell deed was recorded first, followed by the Kervick deed and the plan, respectively. The language of these deeds was carried along so that the right of way benefits and burdens, originally stated, are applicable to the Harris and Hamouda lots.

Long before 1954, McElroy had constructed the two-bay garage on the Harris lot. In December, 1995, a predecessor to Harris razed it, and the area formerly covered by the garage, and the adjacent area of backyard, were filled and paved as a parking area. After Harris purchased the property in 1996, she changed the use of the property from two-family residential to commercial offices. The occupants of the offices have used, and continue to use, the easement to gain access to the rear of the Harris lot. Harris and her tenants use the parking lot behind the building in connection with the office use of the building.

2. *The dispute.* Hamouda initiated the action asserting that the right of way was only for the specific purpose of motor vehicle access to the garage that existed on the Harris lot in 1954, and that the right of way was extinguished when the garage was razed in 1995. Alternatively, Hamouda claims that Harris has both overburdened and overloaded the right of way, and created a nuisance, by using it to access a three-car commercial parking lot in connection with the commercial offices. Hamouda asserts that the right of way was located to benefit the residential occupants living in the Harris lot dwelling, by providing parking for up to two noncommercial vehicles in the two-bay Harris garage.[1]

The judge ruled that the razing of the garage was essentially irrelevant to the continued existence of the right of way because the easement, by the unambiguous language of the creating

---

[1]As to whether the easement was extinguished, we agree with the judge that the burden of proof is on the plaintiff, as the plaintiff affirmatively asserted that the easement had been extinguished. *New York Cent. R.R.* v. *Swenson,* 224 Mass. 88, 92 (1916). See *Reilly* v. *Selectmen of Blackstone,* 266 Mass. 503, 511 (1929). As to permissible extent of use, assuming that the easement has not been extinguished, the burden of proof is upon Harris, even though she is a defendant. "The [party] asserting the easement . . . [has] the burden of proving its existence." *Boudreau* v. *Coleman,* 29 Mass. App. Ct. 621, 629 (1990). This burden includes "the burden of proving the nature and extent of any such easement." *Levy* v. *Reardon,* 43 Mass. App. Ct. 431, 434 (1997). See *Swensen* v. *Marino,* 306 Mass. 582, 583 (1940).

instruments, benefits the whole Harris lot, and was not restricted to just garage access and was not dependent on the condition that the garage continue to exist. Harris, of course, agrees, and Hamouda does not. In a companion statement the judge ruled that circumstances attendant to the execution of the deeds need not be considered because the deeds are unambiguous.[2]

We disagree, in part, with the judge. The instruments are ambiguous. Accordingly, attendant circumstances are relevant to the question of what the grantor intended when the right of way was created. The right of way, as created, was not intended as a general grant of easement to benefit the entire lot. The razing of the garage did not extinguish the easement, however, although our reasons for so holding differ somewhat from the judge's reasoning. We do not find it necessary to remand because, based upon the trial record and the supported findings, we are able to decide the case.

3. *Creation of the right of way.* To determine whether Mc-Elroy intended, by the 1954 deeds, to create an easement to benefit the whole Harris lot, rather than a specific and more limited area, with restrictions and conditions, the court must determine the presumed intent of the grantor from the words used in the deeds, "construed when necessary in the light of the attendant circumstances." *Sheftel* v. *Lebel,* 44 Mass. App. Ct. 175, 179 (1998). When the language of the applicable instruments is "clear and explicit, and without ambiguity, there is no room for construction, or for the admission of parol evidence, to prove that the parties intended something different." *Cook* v. *Babcock,* 7 Cush. 526, 528 (1851). Accord *Panikowski* v. *Giroux,* 272 Mass. 580, 582 (1930); *Westchester Assocs., Inc.* v. *Boston Edison Co.,* 47 Mass. App. Ct. 133, 135 (1999). "[T]he words themselves remain the most important evidence of intention," *Robert Indus., Inc.* v. *Spence,* 362 Mass. 751, 755 (1973), quoting from *National City Bank* v. *Goess,* 130 F.2d 376, 380 (2d Cir. 1942), but those words may be construed in light of the attendant circumstances, *Adams* v. *Planning Bd. of Westwood,* 64 Mass. App. Ct. 383, 389 (2005), and "the objective circumstances to which [the words refer]." *McLaughlin* v. *Select-*

---

[2]Neither party agrees with the judge in this regard. Both rely upon attendant circumstances in their arguments to this court.

*men of Amherst*, 422 Mass. 359, 364 (1996), citing *Butler* v. *Haley Greystone Corp.*, 352 Mass. 252, 257 (1967). "[T]he grant or reservation [creating an easement] 'must be construed with reference to *all its terms* and the then existing conditions *as far as they are illuminating'* " (emphasis added). *Mugar* v. *Massachusetts Bay Transp. Authy.*, 28 Mass. App. Ct. 443, 444 (1990), quoting from *J.S. Lang Engr. Co.* v. *Wilkins Potter Press*, 246 Mass. 529, 532 (1923).

The Campbell deed is ambiguous because its meaning, as far as the right of way is concerned, is uncertain and susceptible of multiple interpretations. The deed explicitly identifies the plan as "showing easement for driveway." The plan is shaded to show a defined location of the driveway and the easement area, and shows the easement to the driveway then leading directly and only to the garage. The deed recites that the right of way is for motor vehicle travel from the garage located on the premises to the street, across the adjoining parcel, and the plan is an integral part of the deed. See *Sheftel* v. *Lebel*, 44 Mass. App. Ct. at 180-181.

Moreover, as noted and emphasized by the judge, the Campbell deed defines the right of way as "appurtenant to the above *described premises*" (emphasis added) and elsewhere in the deed identifies the "premises" as the entire Harris lot, with the buildings thereon. The language thus creates an ambiguity, as the deed could be read, as it was by the judge, to create a right of way to the entire Harris lot, or it could be read as providing a limited right of way for motor vehicle travel from the garage to the street. See *Burritt* v. *Lilly*, 40 Mass. App. Ct. 29, 31 (1996). See also *Ryan* v. *Stavros*, 348 Mass. 251, 259-260 (1964). Compare *Texon, Inc.* v. *Holyoke Mach. Co.*, 8 Mass. App. Ct. 363, 364-365 (1979).

Because the deed is ambiguous, we look to attendant circumstances, which in this case are inferable from the documents and the stipulated facts. McElroy (or those acting on her behalf) deeded both lots as part of the same transaction. She had owned the property for a long time. It is reasonable to infer that she knew the location of the boundary lines and the location of the existing driveway from Bent Street to the garage on the Harris lot. It can also be inferred (1) that the driveway had

concrete curbing (as shown on the plan) that defined the location of the driveway on the ground; (2) that the Harris lot backyard and garage were essentially landlocked without the right of way; (3) that the Harris lot garage required maneuvering space in order to utilize it; and (4) that both lots supported only residential, and not commercial, uses.

The plan, an essential component of the transaction as to both lots, uses the words "easement for driveway" and labels a defined area as a "right of way." Both deeds refer to the plan as showing an "easement for driveway." The Campbell deed provides for "right of way for motor vehicle travel from the garage," and the Kervick deed contains the words "right of way for motor vehicle travel to and from the garage located on the [Hamouda lot]." Deeds must be read as a whole, with reference to all of their terms. See *Mugar* v. *Massachusetts Bay Transp. Authy.*, 28 Mass. App. Ct. at 444.

The garage language was found by the judge as a locator, rather than a limiting statement of purpose and location. That construction, however, renders repeatedly used words meaningless. Also, the garage was unnecessary as a locator, because the plan provided clear evidence of the location of the right of way. See *G.M. Abodeely Ins. Agency, Inc.* v. *Commerce Ins. Co.*, 41 Mass. App. Ct. 274, 277 (1996), quoting from *J. A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 795 (1986) ("every phrase and clause [of a contract] must be presumed to have been designedly employed, and must be given meaning and effect"). The judge then decided that the phrase "appurtenant to the above-described premises" in the Campbell deed trumped the garage language. But the words "appurtenant to" as used in connection with easements are, as a matter of conveyancing custom, often used to distinguish between easements in gross, which may be transferred separately from title to the dominant estate, and easements appurtenant, which run with the ownership of the land served. See Restatement (Third) of Property (Servitudes) § 1.5 comment a, illustration 1 (2000); Bruce & Ely, Law of Easements & Licenses to Land § 2.3 (2001). Upon our review of the instruments we conclude that the phrase was meant to reflect that the right of way was not merely personal to Campbell; it was intended to benefit succes-

sor owners. The use of the plan to depict the garage, maneuvering area, and other features of the lots and driveway minimized, if not eliminated, the need for additional words of location.

Notwithstanding that the easement does not benefit the whole Harris lot, however, the removal of the garage does not extinguish the easement for at least two reasons. First, there is no reason why parking for two vehicles inside a garage is materially different from parking on the footprint of the garage; and, second, it has not been made to appear that the garage is incapable of being reconstructed on the original footprint, if necessary. See *First Natl. Bank of Boston* v. *Konner,* 373 Mass. 463, 467-470 (1977). Contrast *Makepeace Bros.* v. *Barnstable,* 292 Mass. 518, 524-525 (1935).

The continued existence of the garage is not essential to the continued existence of the right of way for the purpose of parking two vehicles on the footprint of the original garage in connection with the use of the Harris lot. We have examined cases in which the reference to a building appears with the creation of an easement, and those cases do not dictate a contrary result. See, e.g., *Cotting* v. *Boston,* 201 Mass. 97, 102 (1909) (reference in an easement to the right to pass through adjoining building "to the store hereby conveyed" created limited right that terminated when the store was destroyed); *Kakas Bros. Co.* v. *Kaplan,* 331 Mass. 323, 327-328 (1954).[3]

Finally, the questions whether Harris may park vehicles for commercial, as opposed to residential, use, and increase the number of vehicles to three (thereby parking on an area greater than the footprint of the original garage), can be properly answered on this record. While we conclude that the easement was limited, rather than a general right of way for the whole

---

[3]The deed in the *Kakas* case created a reservation "for the benefit of [the] adjoining Church estate"; the church building was subsequently removed from the land. *Kakas Bros. Co.* v. *Kaplan,* 331 Mass. at 324-325. "An easement may attach to a building for the benefit of adjoining land or an easement in land may be created for the benefit of a building," but the easement is terminated when the building is destroyed. *Id.* at 327. However, the court ruled that in the circumstances of that case, the reservation was not "created for the benefit of the church structure," but was "intended to impose an easement upon the lot . . . so as to enhance the value of the church land." *Id.* at 327-328.

Harris lot,[4] there appears no reason to distinguish between residential and commercial use of the Harris building. As to the number of vehicles, however, the record (i.e., a two-bay garage) gives instruction that two should be the limit.

*Conclusion.* The judgment is modified by striking the declaration "that the right of way is appurtenant to and benefits the entirety of the Harris lot," and inserting in its place the declaration "that the right of way serves parking for two vehicles on the Harris lot in the approximate footprint of the original garage." In all other respects, the judgment is affirmed.

*So ordered.*

---

[4]The right of way was not created by grant of general right, but for the particular purpose of parking two vehicles, in connection with residential use of the Harris lot, in or on the footprint of the Harris garage. We hold that this is an express limitation. Compare *Tehan* v. *Security Natl. Bank*, 340 Mass. 176, 182 (1959). If an easement is created for a particular purpose, it is limited to the purpose stated. *Anntco Corp.* v. *Shrewsbury Bank & Trust Co.*, 353 Mass. 250, 253 (1967), and cases cited. A "limited right of way and [its] use . . . could not be extended into a general easement greater than that contemplated or intended by the parties to the indenture." *Socony Mobil Oil Co.* v. *Cottle*, 336 Mass. 192, 197 (1957).