The defendant appeals from a Superior Court judgment entered on October 7, 2016, allowing the plaintiffs' requests for a declaratory judgment, a permanent injunction, and damages stemming from the removal and destruction of a tree located in a joint landscape bed between the parties' respective properties. The defendant also appeals from a contempt judgment entered on August 11, 2015. For the reasons set forth below, we affirm.
Background. The judge found the following facts, which are supplemented with undisputed facts from the record.[3] The plaintiffs are the owners of developed property (lot 5) in Southborough, and the defendant is the owner of an adjacent, developed lot (lot 3). The Fisher Road Realty Trust had deeded lot 5 to the plaintiffs in November, 2010 (lot 5 deed) and lot 3 to the defendant in March, 2013 (lot 3 deed). A series of joint landscape beds exist along the property line separating lots 3 and 5, with portions of the landscape beds extending onto each lot. The defendant informed the plaintiffs that he intended to alter the shape, size, and contents of one of the joint landscape beds in order to accommodate the installation of a circular driveway on his property. The defendant was told by both the plaintiffs and members of the corporation from which he purchased the property that certain deed restrictions prevented him from making such alterations to the joint landscape bed. Despite these warnings, the defendant ultimately decided to unilaterally remove a maple tree and bush from one of the joint landscape beds. The maple tree later died because it was improperly planted in another location on the defendant's property.
In May, 2013, the plaintiffs sought and were granted a preliminary injunction preventing the defendant from further destroying, removing, or altering any of the five joint landscape beds that lie on the boundary of the two properties, as well as from failing to maintain the plants or shrubbery in those beds that are on his property. After the preliminary injunction issued, the defendant was found in contempt of that order for having installed piping for an irrigation system in one of the joint landscape beds. Following a five-day, jury-waived trial on the merits, the judge entered a declaratory judgment for the plaintiffs after concluding that the restrictions set forth in the lot 5 deed prevent the defendant from disturbing, altering, or destroying the joint landscape beds. The judge also imposed a permanent injunction preventing the defendant from any such actions with regard to the joint landscape beds, and ordered the defendant to pay $3,000 plus statutory interest to the plaintiffs for the destruction of the maple tree.[4]
Discussion. 1. Deed restrictions. The defendant first argues that the judge erroneously concluded that the lot 5 deed restricted the defendant from altering the joint landscape beds according to his subjective tastes. The lot 5 deed provides, in pertinent part:
"Grantor, as the owner of said Lot 3, agrees for the benefit of the owners from time to time of Lot 5 to maintain those portions of the 'Joint Landscape Beds' which are located within the bounds of Lot 3, and the plantings, shrubbery and vegetation presently located thereon in the same condition as now exists or in such better condition as may hereafter exist, all in a reasonable and professional manner and (ii) and [sic ] grants to Grantor the perpetual right and easement appurtenant to Lot 5 for the owner of Lot 5 to enter upon Lot 3 to perform such maintenance in the event that Grantor and its successors in title to Lot 3 fail to do so."
The lot 3 deed states that the property is conveyed subject to the "rights and easements sets forth in a deed from Grantor to [the plaintiffs]." The defendant concedes that this language subjects him to the requirements set forth in the lot 5 deed. He nevertheless argues that the language of the lot 5 deed does not operate as a restriction, and thus cannot prevent him from altering the portions of the joint landscape beds that are located on his property as he sees fit. We disagree.
"The interpretation of a deed presents a question of law, which we review de novo." Skye v. Hession, 91 Mass. App. Ct. 423, 425 (2017). "The basic principle governing the interpretation of deeds is that their meaning, derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances." White v. Hartigan, 464 Mass. 400, 410-411 (2013) (quotation omitted). "When the language of the applicable instruments is 'clear and explicit, and without ambiguity, there is no room for construction, or for the admission of parol evidence, to prove that the parties intended something different.' " Hamouda v. Harris, 66 Mass. App. Ct. 22, 25 (2006) (Hamouda ), quoting from Cook v. Babcock, 7 Cush. 526, 528 (1851).
Here, the language of the lot 5 deed placed an affirmative duty on the defendant to keep the joint landscape beds, including the plantings and shrubbery located thereon, "in the same condition as now exists or in such better condition as may hereafter exist, all in a reasonable and professional manner." The deed language operates as a restriction because it prevents the defendant, who is in possession of a portion of the joint landscape bed, from using that land in any way he deems suitable. See Labounty v. Vickers, 352 Mass. 337, 347 (1967) ("A 'restriction on the use of land' is a right to compel the person entitled to possession of the land not to use it in specified ways").
While "any ambiguity in an asserted restriction ... should be construed in favor of the freedom of the property from that restriction," Boston Redev. Authy. v. Pham, 88 Mass. App. Ct. 713, 718 (2015) (quotation omitted), we do not consider the lot 5 deed to be ambiguous. The lot 5 deed explicitly restricts the defendant's use of his property by requiring him to maintain the joint landscape beds and the plantings and shrubbery located thereon in the same or better condition as existed at the time the deed was conveyed. Cf. Hamouda, supra at 26 (deed held to be ambiguous because language was "uncertain and susceptible of multiple interpretations"). The defendant sought to alter the joint landscape bed in a manner inconsistent with the provisions of the lot 5 deed by removing a maple tree and bush in order to accommodate the construction of a circular driveway. The judge did not err by entering a declaratory judgment in the plaintiffs' favor.[5]
The defendant further argues that the judge improperly granted the plaintiffs' request for permanent injunctive relief as a means of enforcing the deed restriction. "Trial judges have broad discretion to grant or deny injunctive relief and we review a judge's decision for an abuse of that discretion." LightLab Imaging, Inc. v. Axsun Technologies, Inc., 469 Mass. 181, 194 (2014) (citation omitted). Here, the defendant went forward with the removal of the tree and bush from the joint landscape bed after being told that he could not do so by the plaintiffs, members of the corporation from which he purchased the property, and the Southborough police. Moreover, the defendant consistently took the position that he could take any action that he wanted with respect to the joint landscape beds, so long as he subjectively believed that his actions improved the property. In light of these findings, we cannot say that the judge abused his discretion in granting the plaintiffs' request for a permanent injunction in order to prevent the defendant from further altering the joint landscape beds.
2. Damages. The defendant claims that the judge erred in awarding the plaintiffs damages for the removal of the maple tree. As the record makes clear, the parties and the judge were in agreement that the plaintiffs were proceeding with a claim for compensatory damages based on the value of the tree removed by the defendant. The judge found that the cost to replace and install a comparable tree in the joint landscape bed was $3,000, based on the evidence presented at trial, and therefore awarded the plaintiffs that amount in damages. Contrary to the defendant's assertion, the plaintiffs were clearly not awarded treble damages from the removal of the tree under G. L. c. 242, § 7, and did not otherwise waive their claim for compensatory damages.
3. Contempt order. The plaintiffs filed a complaint for civil contempt against the defendant on July 17, 2015. On August 11, 2015, a contempt judgment entered finding that the defendant violated the preliminary injunction and awarding the plaintiffs $1,500. The defendant did not appeal from the contempt judgment until November 4, 2016, when he filed his notice of appeal from the judgment entered on October 7, 2016. "Despite the fact that a civil contempt action is typically docketed with the number of the underlying action ... it is understood to be an action distinct from the underlying action, culminating in a separate judgment." Jones v. Manns, 33 Mass. App. Ct. 485, 489 (1992). Thus, the defendant's appeal from the contempt judgment is not properly before us because it was not taken within thirty days of the entry of the contempt judgment. See id. at 490 ; Mass.R.A.P. 4(a), as amended, 464 Mass. 1601 (2013).
Judgment entered October 7, 2016, affirmed.

The parties do not challenge any of the judge's subsidiary findings of fact.

The judge also entered judgment for the plaintiffs on the defendant's invasion of privacy counterclaim. On appeal, the defendant has made no argument as to his counterclaim.

The defendant also argues that the relief granted to the plaintiffs cannot stand because the judge did not comply with G. L. c. 184, § 30, inserted by St. 1961, c. 448, § 1, which requires that before a restriction is enforced "it must be determined that the restriction is at the time of the proceeding of actual and substantial benefit to a person claiming rights of enforcement. See Exit 1 Properties Ltd. Partnership v. Mobil Oil Corp., 44 Mass. App. Ct. 571, 573-574 (1998). The record reflects that the judge, who took a view of the property, heard the testimony of six witnesses, and considered fifty-one exhibits, did make such a finding. This is supported by the plain language of the lot 5 deed, which provides assurances that the condition of the joint landscape beds located on lot 3 will not deteriorate, and, in the event they do, it authorizes the owner of lot 5 to enter upon lot 3 "to perform such maintenance."