NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1369

BARBARA J. PRINCIOTTA[1]

vs.

IAN E. DAVIES & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Barbara Princiotta, commenced this action seeking, among other things, a declaration that her property benefits from an easement over a "Beach Area" shown on a 1955 subdivision plan of land in the town of Bourne and that she has the right to use all of the ways shown on the plan.  On cross motions for summary judgment, a judge of the Superior Court declared that the plaintiff's property does not have ownership in or an implied easement to use the Beach Area, and that the

---

[1] Individually and as trustee of the Buttermilk Bay Realty Trust.  We note that after the judgment at issue entered, Mari Ann Princiotta was substituted as successor trustee in the place of the plaintiff.

[2] Peri A. Jacoubs, Edward B. Jacoubs, individually and as trustee of the Jacoubs Family Trust.

plaintiff has limited rights over only some of the ways shown on the 1955 plan. The plaintiff appeals,[3] and we affirm in part, and vacate in part, and alter the declaratory judgment accordingly.

Background. On July 28, 1955, a group of five men[4] (the original developers) purchased a roughly twenty-four acre parcel of land in Bourne as shown on a 1948 plan of land referred to in the deed. Existing "driveways" provided access to a structure the historical documents refer to as the "Lodge," and to miscellaneous smaller structures (a pump house, barn, and water tank) on the property. In October 1955, the Bourne planning board approved a subdivision of the property. The 1955 subdivision plan showed thirteen numbered lots (lots 1-8 abutted the ocean; lots 9-13 were inland lots), three subdivision roads, -- some of which overlapped the original driveways -- and an unnumbered lot labeled "Beach Area."

In 1956, each of the original developers (or their spouses, individually or jointly) took title to a single lot in the subdivision (lots 3 through 7) -- each of which abutted the ocean. Particularly, the wife of one of the original developers

---

[3] Other claims and counterclaims were dismissed pursuant to assented-to motions by the parties.

[4] Jacob Goldberg, Ralph F. Bass, Howard Gainsboro, Max Lepie, and Harry Wolff.

took title to lot 5, now owned by the plaintiff.  Each deed to

the original developers, including the original deed of lot 5,

contained an express easement "to use in common with others

lawfully entitled thereto the roads and ways shown on said plan

for all purposes for which roads and ways are customarily used

in the Town of Bourne."[5]  They also contained easements over

portions of the original driveways and for the use and

maintenance of certain utilities.  The deeds, however, were

silent as to the Beach Area.  The original developers retained

title to the subdivision property other than lots 3-7, including

the Beach Area (the tenant in common property).[6]  Lot 5 abuts

both Arlington Drive and Gainsboro Drive, as shown on the 1955

plan.  Gainsboro Drive is shown on the 1955 plan as terminating

northerly at the Beach Area, but a solid line demarcates the end

of Gainsboro Drive and the Beach Area.

Although each original developer held title to a waterfront

lot, according to the plaintiff's affidavit, submitted in 2020,

---

[5] The plaintiff averred in an affidavit that the roads shown on the 1955 plan have been improved and made passable.  The defendants have not submitted an affidavit but assert in their brief that the roads have not been constructed in conformance with subdivision regulations.  A plan dividing the interior lots submitted by the defendants shows the same subdivision roads and was endorsed as not requiring subdivision approval.

[6] In 1959, the original developers transferred lot 2, a waterfront lot, to a married couple, the Zwetchkenbauns with the same express easements, and added Mr. Zwetchkenbaun as a tenant in common of the remaining subdivision property.

3

the area between the upland of the northwestern lots and the water presently is "characterized by a steep eroding coastal bank [or] cliff," and access to the water from those lots is "treacherous." A seawall borders the coastal areas of these lots, but no usable "beach" exists for most of the daily tide cycle.

As shown on the 1955 plan, the Beach Area is positioned in the northeast corner of the subdivision property, at the end of "Gainsboro Drive," and also abuts lots 3 and 4. It presently has the only "sandy" beach throughout the tide cycle in the subdivision. There is no evidence in the record relative to the condition of the properties, however, in 1956.

The original developers or their successors retained title to the tenants in common property, including the Beach Area and inland properties, for many years without significantly developing it. In 1990, Joseph Cecchenelli, Trustee of New England Realty Trust, then owner of a one-third interest in the tenants in common property, filed a petition for partition. A. 207. In January 1995, an agreement for judgment was filed with the Probate and Family Court and incorporated into a judgment that provided for a land swap not involving lot 5 (Cecchenelli would obtain lot 12 and Kerna Drive, and release his interest in lots 9, 10, 11, and 13 to the tenants in common), a payment of $30,000 from Cecchenelli to the remaining tenants in common, and

4

an easement to specified members of the Cecchenelli family over the Beach Area only for access to a dock situated on lots 1 and 2 on the 1955 plan.

The record is not developed as to the use of the Beach Area between 1956 and 2009, when the plaintiff purchased lot 5 through foreclosure of a mortgage that was secured only by lot 5 and not by the tenants in common property. The plaintiff averred that she reviewed the subdivision plan prior to her purchase and inferred from it that she would have the right to use the Beach Area. From 2009 through 2018, she enjoyed the Beach Area. In 2018, around the same time that the Jacoubs defendants moved to their home on lot 6 full-time, the defendants told the plaintiff she could not use the Beach Area and posted "no trespassing" signs on Gainsboro Drive and the Beach Area.[7] This litigation followed.

On cross motions for summary judgment, the judge declared that the plaintiff has no ownership interest or easement, either express or implied, in the Beach Area, and that although she has the right to use the ways shown on the plan "for all purposes for which roads are customarily used," she does not have an unrestricted right to use Arlington Drive and Gainsboro Drive, and has no right to use the roads and ways to use or access the

---

[7] Defendant Davies is the owner of lot 4.

5

Beach Area; the judge did not declare that the plaintiff owns the fee in the portions of the ways that abut her property. The plaintiff appeals.

Discussion. We review a summary judgment decision de novo, "[v]iewing the evidence in the light most favorable to the party against whom summary judgment entered" to determine whether "there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law" (quotations and citation omitted). Gibney v. Hossack, 493 Mass. 767, 770 (2024).

1. Rights in the ways. We disagree with the judge's declaration that the plaintiff does not have an unrestricted right to use Arlington Drive and Gainsboro Drive. First, portions of the plaintiff's property abut Arlington Drive and Gainsboro Drive as shown on the 1955 plan. "[T]he derelict fee statute provides, '[e]very instrument passing title to real estate abutting a way, whether public or private . . . shall be construed to include any fee interest of the grantor in such way, . . . unless . . . the instrument evidences a different intent by an express exception or reservation.'" Conway v. Caragliano, 102 Mass. App. Ct. 773, 779 (2023), quoting G. L. c. 183, § 58. "The statute 'establishes an authoritative rule of construction' that 'every deed of real estate abutting a way includes the fee interest of the grantor in the way.'" Conway,

6

supra, quoting Tattan v. Kurlan, 32 Mass. App. Ct. 239, 242-243 (1992). The statute applies retroactively, see G. L. c. 183, § 58, as amended through St. 1990, c. 378, § 2, to "contemplated street[s]" so long as they are sufficiently designated, Silva v. Planning Bd. of Somerset, 34 Mass. App. Ct. 339, 343 (1993); reference to the plan in the deed and showing the proposed ways is sufficient. See Hanson v. Cadwell Crossing, LLC, 66 Mass. App. Ct. 497, 502 (2006).

"The statutory presumption is conclusive when the statute applies, unless . . . the 'instrument passing title' evidences a different intent 'by an express . . . reservation.' Other 'attendant' evidence of the parties' intent is no longer probative." McGovern v. McGovern, 77 Mass. App. Ct. 688, 694 (2010), quoting Tattan, 32 Mass. App. Ct. at 243-244. Here, nothing in the original deed of lot 5, or the deeds of lots 3, 4, 6 and 7 from the original developers, purports to reserve the fee in the subdivision ways. By operation of law, therefore, the plaintiff holds title to the center of the portions of Gainsboro Drive and Arlington Drive where they abut her property as shown on the 1955 plan.

The defendants contend that the derelict fee statute does not apply because the original deed of lot 5 described the property by identifying the lot number on the 1955 plan and does not specifically describe the lot as bounding on the ways. It

7

is well settled, however, that "the statute . . . applies to instruments that convey real estate that in fact has frontage along the length of a way" even if that fact is not reflected in the language of the deed (emphasis added).  Rowley v. Massachusetts Elec. Co., 438 Mass. 798, 802 (2003).[8]

Second, as to the plaintiff's right to use all of the ways shown on the 1955 plan, her right does not derive solely from an implied easement arising from her ownership of portions of ways shown on the 1955 plan.  See Reagan v. Brissey, 446 Mass. 452, 458 (2006).  Rather, the original developers transferred lot 5 to the wife of one of the original developers with an express easement "to use in common with others lawfully entitled thereto the roads and ways shown on said plan for all purposes for which roads and ways are customarily used in the Town of Bourne."  While it is true that the deed also contained other easements, none can be read to impair the express easement over all of the ways shown on the 1955 plan.[9]  That express easement passed with

_____

[8] In Rowley v. Massachusetts Elec. Co., 438 Mass. 798, 804 (2003), the Supreme Judicial Court explained that "[i]f we were to construe § 58 not to apply to instruments conveying real estate parcels abutting ways . . . that failed to describe their boundaries as such, the ownership of the small strips that make up such ways . . . would once again be derelict," and "defeat the very object of the statute."

[9] The term "appurtenant" means "incident to and passing in possession with real estate."  Webster's Third New International Dictionary 107 (2002).  With regard to deeds of real estate, "the words 'appurtenant to' as used in connection with easements

8

subsequent conveyances even if the easement was not noted in subsequent deeds.  See G. L. c. 183, § 15; Murphy v. Mart Realty of Brockton, Inc., 348 Mass. 675, 678 (1965).  Moreover, that easements over the existing driveways and for various utilities were also included at least until the ways shown on the plan were improved, does not impair or restrict the plaintiff's express rights over the ways shown on the plan or her ability to use them in their current state or improve them should she so desire.  See Glenn v. Poole, 12 Mass. App. Ct. 292, 296 (1981) (permissible for owner of dominant estate to make necessary repairs to easement).  That alternative easements are included in the deed does not create an ambiguity in the express easement over the ways shown on the 1955 plan.  Where there is nothing in the record that would limit the express easement granted to the plaintiff's predecessor, the defendants may not impede the plaintiff's right to travel the ways shown on the 1955 plan, including the full length of what is shown as Gainsboro Drive.

are, as a matter of conveyancing custom, often used to distinguish between easements in gross, which may be transferred separately from title to the dominant estate, and easements appurtenant, which run with the ownership of the land served." Hamouda v. Harris, 66 Mass. App. Ct. 22, 27 (2006).  Rather than introducing any ambiguity into the express easement over the ways shown on the 1956 deed contained in a separate paragraph, we conclude that the inclusion of "all rights of way appurtenant thereto" in the deed captures any rights of way that had previously existed and ran with the land.  See id.  A right of way need not abut property to be appurtenant to it.  See Denardo v. Stanton, 74 Mass. App. Ct. 358, 362-363 (2009).

9

There is no suggestion that the plaintiff, who used portions of Gainsboro Drive to access the Beach Area for nine years, has abandoned her express easement. Accordingly, the defendants may not interfere with the plaintiff's right to use all of the ways shown on the 1955 plan, including Gainsboro Drive.

2. Easement over the Beach Area. Where the plaintiff acquired lot 5 through foreclosure of a mortgage secured only by lot 5 and not by any interest in the tenants in common property, and there is no suggestion that intervening deeds granted rights in the beach to the owner of lot 5 separate from an interest in the tenants in common property, her rights over lot 5, if any, rest on whether the first grantee took title to lot 5 with an implied easement over the Beach Area that ran with the land. Unlike the express easement to use the ways shown on the plan, the 1956 deed does not contain an express easement to use the Beach Area. The original deeds were silent as to the Beach Area, although it being an unnumbered lot, might give the appearance of a community area when viewing the 1955 plan. Most of the original developers would not have needed an easement over the Beach Area because they retained title to the Beach Area as tenants in common while also owning (individually or with their spouse) an individual lot. See Busalacchi v. McCabe, 71 Mass. App. Ct. 493, 496-498 (2008) (property owner cannot have easement over his or her own estate). The very first owner

10

of lot 5, the wife of one of the original developers, however, had no title to the tenants in common property -- thus her rights, if any, must have arisen by implication.

> "The origin of an implied easement whether by grant or by reservation . . . must be found in a presumed intention of the parties, to be gathered from the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable. A plan referred to in a deed becomes a part of the contract so far as may be necessary to aid in the identification of the lots and to determine the rights intended to be conveyed. Further, [i]t is well established that where land is conveyed with reference to a plan, an easement . . . is created only if clearly so intended by the parties to the deed." (Quotations and citations omitted.)

Reagan, 446 Mass. at 458. "The burden of proving the existence of an implied easement is on the party asserting it." Id. Whether an easement by implication exists is a matter of the presumed intent of the parties, which is "to be gathered from the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable." Boudreau v. Coleman, 29 Mass. App. Ct. 621, 629 (1990). "[I]ntent is paramount." Hickey v. Pathways Ass'n, 472 Mass. 735, 763 n.35 (2015).

Here, there is insufficient evidence that the original grantors intended to transfer lot 5 with an easement over the Beach Area. The 1956 deed was silent as to the "Beach Area"

11

despite containing express easements over the various ways shown on the 1955 plan along with rights to use and maintain existing water pipes on lot 11, rights to use and maintain existing electric light poles and wires providing access to the building on lot 5, and other easements to reach and use utilities (phone and electrical wires).  Thus, although the plaintiff reviewed the 1955 subdivision plan and saw the "Beach Area," which she assumed was a common area, not entirely unreasonably given that it was an unnumbered lot, the absence of any reference to the Beach Area in the deed despite several other express easements should have cast doubt on the grantors' intent to grant an easement over the Beach Area.  See Kitras v. Town of Aquinnah, 474 Mass. 132, 144 (2016) (grantors' foresight to reserve and grant some easements is evidence that omission of easement rights to remaining land was intentional); Joyce v. Devaney, 322 Mass. 544, 549-550 (1948) (creation of express easements in deeds "negatives . . . any intention to create easements by implication").  This is particularly true where the plan depicts Gainsboro Drive with a solid line demarcating the end of the Drive from the beginning of the "Beach Area."  That line is inconsistent with the suggestion that Gainsboro Drive extends into the Beach Area, which may have implied that the rights of way over the subdivision roads included rights in the Beach Area.

12

In the absence of language in a deed that grants rights in seemingly common areas shown on a subdivision plan, courts have also relied on conduct and circumstances under which the lot was sold to support an inference that the grantor intended to grant rights in land other than that described in the deed. See, e.g., Reagan, 446 Mass. at 458-461; Bacon v. Onset Bay Grove Ass'n, 241 Mass. 417, 423 (1922). The record regarding the circumstances around the original deed do not assist the plaintiff. The grantors reasonably could have concluded that it was unnecessary to grant easement rights over the Beach Area to the spouse of an original developer who held a fee interest in the Beach Area. See Kitras, 474 Mass. at 141-143 (concluding parties did not intend to create easements to access partitioned property where Native American tribal custom provided access rights to members of tribe). Moreover, while the record demonstrates that access to the ocean from lot 5 presently is "treacherous," there was no evidence presented that in 1956 there was no beach adjacent to lot 5 or that the ocean was inaccessible from lot 5. Nor was there any evidence of use of the Beach Area by any subsequent owners of lot 5 before the plaintiff started using it in 2009. Although "the construction of the parties shown by the subsequent use of the land may be resorted to[] if such use tends to explain or characterize the deed, or to show its practical construction by the parties,"

13

such evidence may be "so remote in time . . .'as to forbid the inference'" that such use explains or characterizes the intent of the deed (citations omitted). Bacon, supra at 423. We conclude that the plaintiff's use of the Beach Area beginning over fifty years after the 1956 original deed of lot 5 was too remote in time to bear on the intent of the parties in 1956.

Finally, there was no effort by the original developers to sell or subdivide the remaining property and thus, no evidence of marketing materials or promises that may have shed light on the original developers' intent. See Reagan, 446 Mass. at 460, and cases cited. And, in the one related partition action in the 1990s, when Cecchenelli gave up his interest in the tenants in common property, he negotiated an express easement over the Beach Area to reach lots 1 and 2 -- despite owning one of the original waterfront lots. While this transaction has limited relevance being so remote in time, it is consistent with our conclusion that the existence of the Beach Area on the 1955 plan, alone, is insufficient evidence that the original grantors intended to give all of the owners of a lot in the subdivision, including lot 5, the right to use the Beach Area.

Conclusion. So much of the judgment that declares the rights of the plaintiff to the ways and to use the ways shown on the 1955 subdivision plan is vacated and a new declaratory judgment shall enter establishing that the plaintiff owns the

14

fee in the portions of the ways that abut her property (Arlington Drive and Gainsboro Drive) and she has an unrestricted express easement to use all of the ways shown on the 1955 subdivision plan as ways are customarily used in the Town of Bourne.  So much of the judgment that declares that the plaintiff has no title in or easement to use the Beach Area shown on the 1955 plan is affirmed.  The matter is remanded for entry of orders consistent with this decision.

<u>So ordered</u>.

By the Court (Meade,
   Desmond & D'Angelo, JJ.[10]),

*Paul Little*

Clerk

Entered:  May 28, 2025.

---

[10] The panelists are listed in order of seniority.